**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

In re:                               )     BAP No. CC-15-1030-FKiKu
                                     )
PLEASURE POINT MARINA, LLC,          )     Bk. No. 6:14-15871-WJ
                                     )
                  Debtor.            )
_____        )
NARAN REITMAN,                       )
                                     )
                  Appellant,         )
                                     )
v.                                   )     **MEMORANDUM**[1]
                                     )
PLEASURE POINT MARINA, LLC,          )
                                     )
                  Appellee.          )
_____        )

Argued and Submitted on October 22, 2015
at Los Angeles, California

Filed – November 3, 2015

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Wayne E. Johnson, Bankruptcy Judge, Presiding

_____

Appearances:    Kira L. Klatchko of Lewis Brisbois Bisgaard &
                Smith argued for appellant Naran Reitman; Robert
                P. Goe of Goe & Forsythe, LLP argued for appellee
                Pleasure Point Marina, LLC.

_____

Before: FARIS, KIRSCHER and KURTZ, Bankruptcy Judges.

_____

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1(c)(2).

**INTRODUCTION**

This case presents a depressingly familiar set of circumstances. Due to the combined effects of an attorney's inattention, a client's intransigence, and a breakdown in the attorney/client relationship, no one timely complied with discovery obligations. As a result, the bankruptcy court required the client (who in this case is also an attorney) to pay the princely sum of $4,265.87, representing a third of the attorneys' fees and costs incurred by the opposing party, under Rule 7037 of the Federal Rules of Bankruptcy Procedure.[2] We hold that the bankruptcy court did not abuse its discretion in sanctioning the client for his role in hindering the discovery process and disobeying the court's order. Accordingly, we AFFIRM.

**FACTS**

Appellant Naran Reitman is an attorney who represented Ronald and Melinda Lerg in a state-court action against Appellee Pleasure Point Marina, LLC.

Perceiving that the state court litigation was "at an impasse," Mr. Reitman sent counsel for Pleasure Point a letter stating that "plaintiffs are left with no choice but to demand that the Board accept the plaintiffs' proposal, as written, and execute the Settlement Agreement tendered by the plaintiffs . . . . If the Board fails to execute the Settlement

---

[2] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure, Rules 1-86.

2

Agreement[,] . . . the plaintiffs will proceed forward with a plan to place Pleasure Point Marina, LLC into involuntary bankruptcy."[3]

The Lergs retained attorney Thomas Polis as bankruptcy counsel. Mr. Polis did not, however, entirely replace Mr. Reitman; in his own words, Mr. Reitman continued to act "as the referring attorney, to provide information and documents relating to the state court proceeding, and to be available to the bankruptcy attorney and clients as needed."

On May 5, 2014, the Lergs made good on their threat and filed an involuntary bankruptcy petition against Pleasure Point. At the time of the initial filing, the Lergs were the only petitioning creditors.

Pleasure Point filed a Motion to Dismiss Involuntary Bankruptcy Proceeding Pursuant to Sections 303 and 305 ("Motion to Dismiss"). Pleasure Point claimed that it had more than twelve creditors, so at least three petitioning creditors were required under § 303, but the Lergs's petition included only two petitioning creditors. The hearing on the Motion to Dismiss was set for June 30, 2014.

On June 27, 2014, one business day before the hearing on the Motion to Dismiss, Mr. Polis, as counsel for Mr. Reitman, filed a

---

[3] Although Mr. Reitman, as counsel for the Lergs, sent the letter to Pleasure Point threatening involuntary bankruptcy, at oral argument, counsel for Mr. Reitman argued that it was bankruptcy attorney Thomas Polis who suggested the involuntary bankruptcy and that Mr. Reitman "had nothing to do with it." This assertion is not supported by the record and is belied by the fact that Mr. Reitman ostensibly authored the letter to Pleasure Point in the state court action.

3

Joinder to Involuntary Petition by Creditor of the Debtor ("Joinder"). Mr. Reitman contended that he was a creditor of Pleasure Point, based on an assignment of a promissory note made by Pleasure Point in favor of the Lergs.[4] Thus, Mr. Reitman's role changed; in addition to being the "referring attorney" working with Mr. Polis, he became a party to the involuntary case and a client of Mr. Polis. According to Mr. Reitman, this was supposed to be a temporary arrangement: "I expected to retain personal counsel and substitute such counsel in Mr. Polis' place shortly thereafter."

In response to the Joinder, Pleasure Point argued that the assignment was ineffective and was made solely to fabricate a third petitioning creditor. This argument was unavailing; the bankruptcy court denied Pleasure Point's Motion to Dismiss and scheduled trial on the involuntary petition for August 21, 2014. Due to the impending trial date, the court set an expedited discovery schedule. Exhibit lists and witness lists were due on August 7, and responses to requests for production were due seven days after service, rather than the usual thirty days.

On or around July 11, Pleasure Point served the Lergs with requests for production of documents ("First Lergs RPOD"). Responses were due on July 21. Thirty-four of the thirty-eight categories of requested documents dealt with the merits of the Lergs's claims against Pleasure Point; the remaining four

---

[4] At oral argument, counsel for Mr. Reitman argued that Mr. Polis advised Mr. Reitman that he should be the third petitioning creditor. This contention is also unsupported by the record.

4

categories concerned the assignment of claims to Mr. Reitman.

Mr. Polis served the Lergs's written responses on July 24, a few days late. The responses claimed that the Lergs had already filed all of the requested documents in the bankruptcy court. Accordingly, the Lergs did not produce any additional documents.

On or around July 14, Pleasure Point served a second set of requests for production of documents on the Lergs (collectively, "Second Lergs RPOD"). The Second Lergs RPOD included a single request for the Lergs's federal and state income tax returns spanning 2003 to the present.

Also on or around July 14, Pleasure Point served Mr. Reitman with a request for production of documents ("Reitman RPOD"). Among other things, the requests concerned the assignment of claims from the Lergs to Mr. Reitman, as well as Mr. Reitman's billing records regarding his representation of the Lergs. The responses to the Second Lergs RPOD and the Reitman RPOD were due by July 21.

At that point, the discovery process began to go awry. Mr. Polis forwarded the Reitman RPOD to Mr. Reitman on July 15. According to Mr. Reitman's unrebutted declaration testimony, by July 17, he had given Mr. Polis everything he needed to prepare responses to the Second Lerg RPOD and the Reitman RPOD. Mr. Reitman told Mr. Polis that all of the requested documents were either protected by the attorney-client privilege or nonexistent. Mr. Reitman expected Mr. Polis to prepare and serve the responses, and Mr. Polis never contended otherwise.

On July 25, 2014, Mr. Reitman left on a two-week motorcycle trip to South Dakota. On July 28, Mr. Polis also left on

5

vacation. Mr. Polis had not served the discovery responses that were due on July 21; he has never attempted to explain or excuse that failure.

On July 29, Pleasure Point sent a letter to Mr. Polis to follow up on the outstanding discovery requests. Mr. Polis, who was still on vacation at the time, informed Pleasure Point the following day that he would respond to the discovery requests when he returned to the office on August 5. Given that witness lists and exhibit lists were due on August 7, Pleasure Point found Mr. Polis's response unacceptable and thereafter filed its Emergency Motion to Compel Responses to Written Discovery and for Monetary Sanctions Against Petitioning Creditors and Their Counsel of Record ("Motion to Compel").

Mr. Reitman contends that he did not realize that Mr. Polis had not responded to the Second Lergs RPOD and the Reitman RPOD until he checked his e-mail on July 30. He then exchanged a number of e-mails with Mr. Polis, wherein he blamed Mr. Polis for his failure to answer the discovery requests and accused Mr. Polis of professional negligence. Mr. Polis responded by expressing frustration with Mr. Reitman's self-serving e-mails and his attempts to control the case.

On August 4, Mr. Polis filed an opposition to the Motion to Compel. Mr. Polis argued (in summary) that Pleasure Point's requests were overbroad. He did not address his failure to file timely responses to the Second Lergs RPOD and the Reitman RPOD.

The bankruptcy court held a hearing on the Motion to Compel

6

on August 5.[5] Mr. Reitman still had not produced any documents responsive to the discovery requests. The court continued the hearing and entered its Second Scheduling Order that provided for, among other things, a meet-and-confer and supplemental briefing regarding the Motion to Compel. The court ordered:

> 7. A continued hearing regarding the Emergency Motion [to Compel] shall occur on August 13, 2014 at 1:00 p.m. to consider the request of Debtor to compel discovery responses. Trial counsel for all parties are hereby ordered to meet and confer regarding the pending discovery dispute. If the parties do not otherwise resolve the matter themselves, then on August 8, 2014 at 12:00 p.m., the parties shall meet and confer for at least one hour in person in good faith in an attempt to resolve the Emergency Motion. Senior counsel of record for the moving party and senior counsel of record for the opposing party shall personally attend the meeting. The meeting shall occur at the United States Bankruptcy Court, 3420 Twelfth Street, Riverside, CA 92501 in any available conference room on the third floor. The parties may move the date, time and location of the meeting pursuant to an agreement confirmed in writing (or by e-mail) provided the meeting occurs no later than August 8, 2014 at 12:00 p.m. No court order is required to move the date, time and location of the meeting. However, the meeting must occur in person (i.e. not by telephone) and senior counsel must attend.

The court also required a joint stipulation ("Stipulation") pursuant to Central District of California Local Bankruptcy Rule ("LBR") 7026-1(c)(3) and provided for supplemental briefing regarding the Motion to Compel:

> 8. If the parties are unable to reach an agreement resolving the Emergency Motion, then (a) the parties shall prepare the stipulation required by LBR 7026-1(c)(3) and submit it to the court no later than August 11, 2014, (b) supplemental briefs regarding the Emergency Motion are due no later than August 12,

---

[5] Mr. Reitman states that he wanted to monitor the hearing telephonically, but Mr. Polis told him (incorrectly) that the hearing was set for 1:30 p.m., not 1:00 p.m. As a result, Mr. Reitman only heard the last few minutes of the hearing.

7

2014 at 10:00 a.m. and (c) trial counsel for all parties must appear at the continued hearing on August 13, 2014. Appearances by telephone are not authorized for the hearing on August 13, 2014.

LBR 7026-1(c)(3) provides, among other things, that the Stipulation "must identify, separately and with particularity, each disputed issue that remains to be determined at the hearing and the contentions and points and authorities of each party as to each issue." It must also advise the court of "each party's contentions" for each disputed discovery request. LBR 7026-1(c)(3)(A), (B).

The parties held their meet-and-confer on August 7, 2014. Mr. Polis attended in person on behalf of Mr. Reitman and the Lergs, and Robert Goe and Elizabeth LaRocque attended in person as counsel for Pleasure Point. Mr. Reitman, who was still out of state and whom Mr. Polis had told he could participate by phone "if you so choose," participated telephonically.

The parties reached a simple resolution of the dispute about the Second Lergs RPOD. Mr. Polis agreed to produce redacted portions of the Lergs's tax returns as a compromise to Pleasure Point's request for complete and unredacted copies.

The discussion of the Reitman RPOD was more difficult. Pleasure Point recounts that Mr. Reitman "was combative and was completely uncooperative in producing crucial documents . . . ." Mr. Reitman acknowledges that "[t]he discussion was 'spirited.'" Mr. Reitman maintained that he had no documents relating to the assignment of the Lergs's promissory note to him. In the end, Mr. Reitman agreed only to provide a spreadsheet summarizing the amount of his billings to and payments received from the Lergs

8

and a privilege log for a single letter.

At the conclusion of the meet-and-confer, Mr. Reitman believed that all discovery disputes were resolved. He says, however, that he realized shortly after the meeting that he "did not hear how the tax return issue was disposed of." Later that evening, he told Mr. Polis (via text message) to include in the Stipulation a provision that the Lergs's tax returns were not to be revealed to anyone other than the attorneys and retained experts.

Counsel for Pleasure Point drafted the Stipulation required by the bankruptcy court pursuant to LBR 7026-1(c)(3). On August 8, 2014, they sent the draft to Mr. Polis to complete the sections describing the positions of Mr. Reitman and the Lergs. On August 10, Mr. Polis responded that he would provide his comments by mid-day on August 11.

At this point, the already strained relationship between Mr. Reitman and Mr. Polis collapsed. Mr. Polis did not forward Mr. Reitman the draft Stipulation until the evening of Sunday, August 10, two days after he had received it and one day before it was due. On August 11 (the day the Stipulation was due), Mr. Reitman responded by stating that, "I do not understand the Stipulation. It contains nothing relating to the Lergs and myself prepared by you." He also stated that, "[t]he Stipulation also contains gratuitous statements and argument by the LLC's counsel, which has no place in a Stipulation. All such statements should be deleted." Mr. Polis did not respond.

That same day, Mr. Polis's office sent Ms. LaRocque a revised version of the Stipulation, which included a description

9

of the Lergs's position but left blanks for Mr. Reitman's position. Ms. LaRocque responded by requesting comments for Mr. Reitman. Mr. Polis responded that he had forwarded the Stipulation to Mr. Reitman for his review.

Mr. Polis forwarded a copy of the revised Stipulation to Mr. Reitman. In response to Mr. Reitman's further questions regarding whether the Lergs's tax returns would be produced, Mr. Polis responded, "You obviously have an agenda going forward with this case that's other than litigating in the most fair, effective and efficient manner to get this done for the clients' best outcome. That's my objective and I'll do what I have to do [to] achieve those ends." Mr. Polis also demanded that Mr. Reitman transmit the Lergs's tax returns to his office for production to Pleasure Point, but Mr. Reitman responded that he had returned the tax returns to the Lergs and was no longer in possession of them.[6]

At this point, Mr. Polis essentially abandoned Mr. Reitman. At 3:35 p.m., Ms. LaRocque e-mailed Mr. Polis a revised version of the Stipulation and again asked for comments regarding Mr. Reitman. Shortly thereafter, Mr. Polis told Ms. LaRocque that she should contact Mr. Reitman directly, because "[a]fter a recent conference call regarding this matter, [he was] not

_____

[6] Mr. Reitman's claim that he no longer had possession of the returns is implausible. In the very same e-mail, Mr. Reitman informed Mr. Polis, "I have the clients in my office at this moment." In other words, Mr. Reitman said, virtually in the same breath, that he could not produce the tax returns because the Lergs had them and that the Lergs were at that moment in Mr. Reitman's office. Mr. Reitman was "hiding the ball," not just from Pleasure Point, but also from his own counsel.

10

certain as to [his] future role in this matter." She forwarded the Stipulation to Mr. Reitman and asked for his comments as soon as possible. Mr. Reitman responded, "I have sent instructions under separate cover to Mr. Polis a few moments ago regarding these issues. Mr. Polis now knows what he needs to do." Shortly thereafter, at 5:47 p.m., he again e-mailed Ms. LaRocque, "please advise Mr. Polis, who is being copied on this message, that I am instructing that the Stipulation not be returned to Mr. Goe's office [counsel for Pleasure Point] under any circumstances unless and until you receive further instructions either from me or the clients." Shortly after 6:00 p.m., without waiting for a further response from Mr. Reitman, counsel for Pleasure Point filed the Stipulation in an attempt to meet the court's deadline.

The following morning, on August 12, Pleasure Point filed its supplemental brief in support of its Motion to Compel, as provided in the Second Scheduling Order. Pleasure Point alleged that Mr. Reitman and the Lergs were in contempt of the bankruptcy court's order for failing to execute the Stipulation by August 11. Pleasure Point requested that the court sanction Mr. Reitman, the Lergs, and Mr. Polis for $11,415.10 in attorneys' fees and costs.

Half an hour later, Mr. Polis filed the Stipulation with his signature on behalf of the Lergs. Mr. Polis did not sign the Stipulation on behalf of Mr. Reitman or include information about Mr. Reitman's position.

Mr. Polis also filed a declaration in which he attempted to explain the circumstances surrounding the Stipulation (and to exculpate himself). He said he had recommended that the Lergs

11

produce redacted portions of their tax returns and that Mr. Reitman had promised to provide the returns for production. He said that the Lergs and Reitman "are now for reasons unbeknownst to me hesitant to provide such documents . . . ." He said he had "no control" over the production of documents by Mr. Reitman, that Mr. Reitman's failure to comply with the Stipulations was "his own doing of which I have no control," and that his efforts to protect the Lergs's interests and comply with the court's discovery order "have been completely thwarted by [Mr. Reitman's] blatant disregard for the Court's Discovery Order . . . ." He said he "will be substituting out of this matter very soon."[7]

That day, Mr. Reitman produced a brief summary of billing records and payments from the Lergs to Mr. Reitman. The Lergs also agreed to produce their redacted tax returns.

The following day, at the August 13 continued hearing on the Motion to Compel, the parties apprised the bankruptcy court of the ongoing discovery dispute. The court said that it would "take off calendar the motion to compel as to the Lergs, and deem it as resolved by consent of the parties." The court turned its attention to Mr. Reitman, inquiring if he ever responded to the Reitman RPOD. Mr. Reitman at first argued that he was not served with any discovery request, because it was served on Mr. Polis.

---

[7] The bankruptcy court did not sanction Mr. Polis, so we need not rule on the propriety of his conduct. We do not condone his decision to abandon one of his clients - Mr. Reitman - in favor of his own self interest or to disclose privileged attorney-client communications to the court in an effort to exculpate himself and avoid sanctions.

12

When the court pressed him whether he "at any time, provided a written response to the discovery request," he answered, "No, sir. I provided all of that information to Mr. Goe."[8] He further admitted that he did not provide a privilege log to opposing counsel; participated in the meet-and-confer by telephone; did not file a supplemental brief; and believed that the discovery dispute was mostly resolved, except for the question whether a particular letter was privileged. He argued, "I did not understand that I was a party to this motion until pretty much right now.[9] I was never served with discovery. Mr. Polis was. At no time did Mr. Polis tell me that, 'You need to respond to this discovery, and so get it responded to.'"

At the conclusion of the hearing, the bankruptcy court sanctioned Mr. Reitman for his (1) failure to respond to discovery requests; (2) failure to participate in person at the August 7, 2014 meet-and-confer; (3) failure to file a supplemental brief; and (4) failure to execute the Stipulation.

The bankruptcy court sanctioned Mr. Reitman $4,265.87 and explained its rationale for doing so:

> With respect to the sanctions of $4,265.87, that figure is calculated as follows:

[8] Mr. Reitman probably misspoke. He probably meant to refer to Mr. Polis, his attorney, rather than opposing counsel.

[9] Mr. Reitman's position that he was not served with the Motion to Compel or did not understand that it was directed at him is disingenuous. At oral argument, counsel argued that if the motion was electronically filed, he would not have seen it. However, the record is clear that Mr. Polis forwarded the Motion to Compel to Mr. Reitman. Moreover, even a cursory reading of the motion (by an attorney, no less) would inform Mr. Reitman that he is one of the subjects of the Motion to Compel.

13

> The Court has reviewed the billing records that have been submitted by the moving party. Those billing records articulate or identify $12,656 in attorney's fees; $141.60 in costs, for a total of $12,797.60 in fees and costs. The Court has divided that by one-third, resulting in the sanctions of $4,265.87.[10]

The bankruptcy court did not sanction Mr. Polis or the Lergs and stated that, "I think, frankly, Mr. Polis has saved his clients [the Lergs] - or soon to be former clients - from disaster by signing a stipulation . . . ."

Mr. Reitman thereafter filed a motion for reconsideration, in which he attempted to blame the discovery dispute on Mr. Polis. He argued that any of his mistakes, "whether as an attorney or represented client . . . were the product of excusable neglect" under Civil Rule 60(b).

At the December 5, 2014 hearing, the court orally denied the motion for reconsideration, and it issued its order to that effect on January 22, 2015. Mr. Reitman timely filed his notice of appeal on January 28, 2015.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(1). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

(1) Whether the bankruptcy court abused its discretion in

---

[10] Although Pleasure Point requested only $11,415.10 in attorneys' fees and costs, the actual billing invoices attached to Pleasure Point's supplemental brief to its Motion to Compel totaled $12,656 in attorneys' fees and $141.60 in costs. Thus, the court used the amount calculated from the actual invoices, rather than the number stated in the brief.

14

sanctioning Mr. Reitman under Rule 7037.

(2) Whether the bankruptcy court abused its discretion in denying Mr. Reitman's motion for reconsideration.

**STANDARDS OF REVIEW**

We review the bankruptcy court's imposition of discovery sanctions for abuse of discretion. <u>Freeman v. San Diego Ass'n of Realtors</u>, 322 F.3d 1133, 1156 (9th Cir. 2003). We apply a two-part test to determine objectively whether the bankruptcy court abused its discretion, first determining de novo whether the court identified the correct legal rule, and second examining the court's factual findings under the clearly erroneous standard. <u>Beal Bank USA v. Windmill Durango Office, LLC (In re Windmill Durango Office, LLC)</u>, 481 B.R. 51, 64 (9th Cir. BAP 2012) (citing <u>United States v. Hinkson</u>, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc)). A bankruptcy court abuses its discretion if it applied the wrong legal standard or its findings were illogical, implausible, or without support in the record. <u>TrafficSchool.com, Inc. v. Edriver Inc.</u>, 653 F.3d 820, 832 (9th Cir. 2011).

Similarly, we review the bankruptcy court's denial of a motion for reconsideration for abuse of discretion. <u>Cruz v. Stein Strauss Tr. #1361, PDQ Invs., LLC (In re Cruz)</u>, 516 B.R. 594, 601 (9th Cir. BAP 2014) (citing <u>Tracht Gut, LLC v. Cty. of L.A. Treasurer & Tax Collector (In re Tracht Gut, LLC)</u>, 503 B.R. 804, 810 (9th Cir. BAP 2014)).

"We do not reverse for errors not affecting substantial rights of the parties, and may affirm for any reason supported by the record." <u>COM-1 Info, Inc. v. Wolkowitz (In re Maximus</u>

15

Computers, Inc.), 278 B.R. 189, 194 (9th Cir. BAP 2002); see 28 U.S.C. § 2111; Civil Rule 61, incorporated by Rule 9005.

**DISCUSSION**

**A.    Civil Rule 37 mandates discovery sanctions for noncompliance with Civil Rule 34.**

Under Civil Rule 34(a), a party may serve another party with a request:

> (1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control:
>
> > (A) any designated documents or electronically stored information - including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations - stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or
> >
> > (B) any designated tangible things[.]

Civil Rule 34(a).  The responding party must generally serve a response within thirty days of service, although the court may order a longer or shorter period.  Civil Rule 34(b)(2)(A).  "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons."  Civil Rule 34(b)(2)(B).

Civil Rule 37(a), which is made applicable by Rule 7037, provides that a party may move to compel discovery when, inter alia, "a party fails to respond that inspection will be permitted - or fails to permit inspection - as requested under [Civil] Rule 34."  Civil Rule 37(a)(3)(B)(4).  In the event a motion to compel is granted, Civil Rule 37 states that "the court must,

16

after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  Civil Rule 37(a)(5)(A).

However, Civil Rule 37(a) also provides that sanctions are inappropriate in certain circumstances:

> But the court must not order this payment if:
>
> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>
> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
>
> (iii) other circumstances make an award of expenses unjust.

Id.

Similarly, if a party violates a court order regarding discovery, then "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Civil Rule 37(b)(2)(c).

The party facing sanctions bears the burden of proving that its failure to disclose the required information was substantially justified or is harmless.  R&R Sails, Inc. v. Ins. Co. of Pa., 673 F.3d 1240, 1246 (9th Cir. 2012) (citing Torres v. City of L.A., 548 F.3d 1197, 1213 (9th Cir. 2008) (construing FRCP 37(c)(1))).  The court is not required to find bad faith as a prerequisite to imposing monetary sanctions.  Bissell v. United

17

<u>States</u>, 321 F. App'x 549, 552 (9th Cir. 2008); <u>see</u> <u>Lewis v. Ryan</u>, 261 F.R.D. 513, 518 (S.D. Cal. 2009) ("The lack of bad faith does not immunize a party or its attorney from sanctions, although a finding of good or bad faith may be a consideration in determining whether imposition of sanctions would be unjust and the severity of the sanctions." (citing <u>Hyde & Drath v. Baker</u>, 24 F.3d 1162, 1171 (9th Cir. 1994))).

In imposing sanctions, the court should consider the relative responsibility of the attorney and the client in causing the discovery abuse. <u>See, e.g.</u>, <u>Dodson v. Runyon</u>, 86 F.3d 37, 40 (2d Cir. 1996) (In considering "whether the sanctions should be aimed primarily against the party or the attorney, it can be important for the district court to assess the relative roles of attorney and client in causing the delay, as well as whether a tactical benefit was sought by the delay. In making this statement, we are cognizant of the fact that a client is ordinarily bound by the acts of his lawyer, and this - of course - extends to behavior that would justify a dismissal for failure to prosecute."); <u>Tom v. S.B., Inc.</u>, 280 F.R.D. 603, 612 (D.N.M. 2012) ("In reviewing whether sanctions are appropriate, the court should consider **who** acted in bad faith, the party or the attorney, and to what degree." (emphasis in original)). Courts must "analyze the conduct of parties and their attorneys separately. 'The rule that the sins of the lawyer are visited on the client does not apply in the context of sanctions,' and we therefore must 'specify conduct of the client herself that is bad enough to subject her to sanctions.'" <u>Ransmeier v. Mariani</u>, 718 F.3d 64, 71 (2d Cir. 2013) (quoting <u>Gallop v. Cheney</u>,

18

660 F.3d 580, 584 (2d Cir. 2011) (per curiam), vacated in part on other grounds, 667 F.3d 226, 231 (2d Cir. 2011)).

**B.     The bankruptcy court did not abuse its discretion when it sanctioned Mr. Reitman.**

There is no dispute that the bankruptcy court identified the correct standard for the imposition of sanctions under Rule 7037. Rather, Mr. Reitman argues that the court erred in applying that standard to the facts of this case.

Similarly, there is no dispute that Mr. Reitman did not fully comply with the bankruptcy court's Second Scheduling Order. Mr. Reitman claims, however, that the bankruptcy court should have sanctioned Mr. Polis, rather that Mr. Reitman, for that noncompliance. Therefore, we turn to the four instances of noncompliance for which the bankruptcy court sanctioned Mr. Reitman.

**1.     Failure to respond to the Reitman RPOD**

The bankruptcy court ruled that Mr. Reitman failed to respond to the Reitman RPOD. We think that this failing, standing alone, would not justify sanctioning Mr. Reitman rather than Mr. Polis.

The uncontroverted evidence shows that, well before the response was due, Mr. Reitman gave Mr. Polis the information Mr. Polis needed to draft the response to the Reitman RPOD. For reasons he has never attempted to explain, Mr. Polis simply failed to complete that task.

Mr. Reitman's arguments to the bankruptcy court on this issue probably hurt his cause. For example, he argued that he was not responsible for the failure to respond because he was

19

never "served" with the Reitman RPOD. This contention was meritless. Pleasure Point's counsel served the Reitman RPOD on Mr. Polis, who was Mr. Reitman's attorney. Pleasure Point did not need to serve Mr. Reitman with discovery requests directly. The argument is also disingenuous, because Mr. Reitman eventually admitted that Mr. Polis promptly forwarded a copy of the Reitman RPOD to him, and the record confirms that Mr. Polis forwarded a copy of the discovery request on July 15. The bankruptcy court correctly chastised Mr. Reitman for his misleading statements.

Nevertheless, responsibility for the failure to serve a response properly rests with Mr. Polis, and that failing, standing alone, would not justify sanctions against Mr. Reitman.

**2. Failure to attend the meet-and-confer in person**

Second, the bankruptcy court sanctioned Mr. Reitman for attending the August 7 meet-and-confer by phone, rather than in person. The bankruptcy court thought that this was contrary to its Second Scheduling Order which provides, in relevant part:

> Trial counsel for all parties are hereby ordered to meet and confer regarding the pending discovery dispute. . . . [T]he parties shall meet and confer for at least one hour in person in good faith in an attempt to resolve the Emergency Motion. Senior counsel of record for the moving party and senior counsel of record for the opposing party shall personally attend the meeting. . . . [T]he meeting must occur in person (i.e. not by telephone) and senior counsel must attend.

Mr. Reitman attended the meeting telephonically, ostensibly with Mr. Polis's permission.

Mr. Reitman argues that, because he was not counsel of record in the bankruptcy case, he was not obligated to attend the meet-and-confer in person. He argues that the court did not order him to attend the meeting and there is no applicable rule

20

requiring a client to attend a discovery meeting, in person or otherwise. We agree that the Second Scheduling Order is not sufficiently clear to support sanctions against Mr. Reitman on this score.

The court made clear that "senior counsel of record" were required to attend the meeting in person. The order stated at least three times that counsel were to meet "in person." The order does state at one point that "the parties shall meet and confer in good faith," but all of the provisions requiring personal appearance apply only to counsel, not the parties. The court did not require any party to attend the meet-and-confer, nor did it impose a requirement that non-counsel must attend in person.

Although the meet-and-confer was ordered by the bankruptcy court, the relevant local rule is instructive. LBR 7026-1(c)(2) provides that "**counsel** for the parties must meet in person or by telephone in a good faith effort to resolve a discovery dispute." LBR 7026-1(c)(2) (emphasis added). The rule further states that "[u]nless altered by agreement of the parties or by order of the court for cause shown, **counsel** for the opposing party must meet with **counsel** for the moving party within 7 days of service upon counsel of a letter requesting such a meeting . . . ." Id. (emphases added). The rule only requires the attendance of counsel and does not require that any party attend the meet-and-confer. Nor can we say that the court's Second Scheduling Order was clear enough to have "altered" this requirement "by order of the court[.]"

When sanctioning Mr. Reitman, the bankruptcy court may have

21

conflated his roles as a client of Mr. Polis and as "referring counsel" (in Mr. Reitman's words) for the Lergs. The court referred to Mr. Reitman as "counsel" and stated:

> In addition, Mr. Reitman did not participate in person with the meet and confer meeting. That was specifically ordered by the Court. There was a very intentional reason for that. I find that personal appearances at such meetings heightens the attention of counsel involved, cools tempers, and reminds people the seriousness of problems with discovery issues. And in fact, this case is a perfect example of how a resolution was achieved by counsel who were personally present, **but not with counsel who was on the telephone**.

(Emphasis added.) The bankruptcy court's statements are understandable because, in many respects, Mr. Reitman behaved more like an attorney than a client. The fact remains, however, that he was represented by Mr. Polis during the bankruptcy proceedings and the Second Scheduling Order did not unambiguously require the clients, as opposed to counsel, to attend the meet-and-confer.

At oral argument, counsel for Pleasure Point - who also represented Pleasure Point during the bankruptcy court proceedings - conceded that he did not believe that the court's Second Scheduling Order regarding in-person participation applied to Mr. Reitman. We agree and hold that the court abused its discretion in sanctioning Mr. Reitman for not participating in the meet-and-confer in person.

**3. Failure to file a supplemental brief**

Third, the bankruptcy court sanctioned Mr. Reitman for neglecting to file a supplemental brief in opposition to the Motion to Compel. The Second Scheduling Order provided:

> If the parties are unable to reach an agreement

22

resolving the Emergency Motion, then (a) the parties shall prepare the stipulation required by LBR 7026-1(c)(3) and submit it to the court no later than August 11, 2014, (b) **supplemental briefs regarding the Emergency Motion are due no later than August 12, 2014** at 10:00 a.m. and (c) trial counsel for all parties must appear at the continued hearing on August 13, 2014.

(Emphasis added.)

Mr. Reitman argues that the order permitted, but did not require, the parties to file supplemental briefs. We agree.

The Second Scheduling Order does not explicitly require supplemental briefs. While the court makes clear that certain of the provisions are mandatory - "the parties **shall** prepare the stipulation" and counsel "**must** appear at the continued hearing" - the provision regarding supplemental briefs does not contain mandatory language: "supplemental briefs regarding the Emergency Motion are due no later than August 12, 2014[.]" (Emphases added.) This phrasing does not create an imperative that would require supplemental briefing. It would be reasonable for Mr. Reitman to think that further briefing was optional and that he could stand on the arguments raised in his prior opposition to the Motion to Compel.

Indeed, counsel for Pleasure Point stated at oral argument that he did not believe that the supplemental briefs were mandatory. Thus, we hold that it would have been unjust to sanction Mr. Reitman solely for failing to file a supplemental brief in opposition to the Motion to Compel.

**4.    Failure to sign the Stipulation**

Finally, the bankruptcy court sanctioned Mr. Reitman for failing to sign the Stipulation by August 11, 2014. At the

23

hearing on the Motion to Compel, the court ordered that, following the meet-and-confer, "the parties shall prepare the stipulation required by LBR 7026-1(c)(3) and submit it to the court no later than August 11, 2014[.]"

Mr. Reitman argues that he believed that Mr. Polis was drafting the Stipulation with counsel for Pleasure Point. He states that, when he finally saw a draft of the Stipulation, it did not contain any information relating to himself and the Lergs, and Mr. Polis did not make an effort to include information on Mr. Reitman's behalf. Mr. Reitman contends that, when Ms. LaRocque contacted him for his input, he did not realize that she was Pleasure Point's counsel.[11] He says that his e-mail directing Mr. Polis not to sign the Stipulation was not intended to disobey the court's order, but to ensure that "obvious deficiencies were addressed, and language was added to protect the Lergs from the disclosure of sensitive, personal financial information."

Mr. Reitman failed to consider the requirements of LBR 7026-1(c)(3). His arguments on appeal reflect the same error. The rule provides:

> Moving Papers. If counsel are unable to resolve the dispute, the party seeking discovery must file and

[11] Mr. Reitman claims that he mistakenly thought that Ms. LaRoque was a colleague of Mr. Polis, rather than opposing counsel. This statement is not believable. Ms. LaRoque's electronic signature on the e-mail stated that she was affiliated with the law firm representing Pleasure Point. Further, she included with her e-mail her prior string of e-mails with Mr. Polis, which make it clear that she was opposing counsel. Finally, a prior e-mail strongly suggests that Mr. Reitman knew that Ms. LaRoque did not work with Mr. Polis.

24

serve a notice of motion together with a written stipulation by the parties.

(A) **The stipulation must be contained in 1 document and must identify, separately and with particularity, each disputed issue that remains to be determined at the hearing and the contentions and points and authorities of each party as to each issue.**

(B) **The stipulation must not simply refer the court to the document containing the discovery request forming the basis of the dispute.** For example, if the sufficiency of an answer to an interrogatory is in issue, the stipulation must contain, verbatim, both the interrogatory and the allegedly insufficient answer, **followed by each party's contentions**, separately stated.

(C) In the absence of such stipulation or a declaration of counsel of noncooperation by the opposing party, the court will not consider the discovery motion.

LBR 7026-1(c)(3) (emphases added). In other words, the stipulation must not only state the parties' agreements, but must also state and describe their disagreements and their respective arguments.

Mr. Reitman balked at the draft Stipulation because he did not think that it should contain Pleasure Point's arguments. In an e-mail to Mr. Polis, he complained that "[t]he Stipulation also contains gratuitous statements and argument by the LLC's counsel, which has no place in a Stipulation. All such statements should be deleted."[12] He admitted to the court, "It is true we did not comply with the Court's order with respect to

---

[12] Mr. Reitman told the court that he disagreed with the Stipulation because "[i]t didn't look like a stipulation to me. It looked like a brief with lawyer's arguments in it, for the most part. And whatever agreements were in that stipulation were buried in it."

25

getting a signed stipulation, but again, if the Court has read that stipulation, which it sounds like you have, I just - I've never seen a stipulation that looked like that, frankly."

If Mr. Reitman had bothered to read the local rule, he would have known that his objection lacked any merit. LBR 7026-1(c)(3) explicitly requires that the stipulation include the parties' arguments in support of their positions.

Mr. Polis might have been able to resolve this problem by explaining the local rule to Mr. Reitman. So far as the record reveals, Mr. Polis did not attempt to do so. And by that point, the relationship between Mr. Reitman and Mr. Polis was so poisonous that Mr. Reitman likely would not have believed anything Mr. Polis said. Nevertheless, Mr. Reitman was forming legal judgments about what the stipulation should include without familiarizing himself with the applicable law. As a licensed attorney, he cannot escape responsibility for his own legal opinions, even if his co-counsel failed to inform him that those opinions were wrong.

Similarly, Mr. Reitman objected that the Stipulation did not include language protecting the Lergs's tax returns from disclosure. He complained to the court, "I did see some language that Mr. Polis put into the stipulation relating to [non-disclosure of the Lergs's tax returns], but I didn't see any indication that Mr. Goe's office had agreed to it, or even knew about it." Again, Mr. Reitman failed to inform himself of the applicable legal requirement. Under LBR 7026-1(c)(3), if the parties have not reached agreement on all issues, the parties were still required to file the Stipulation and state their

26

positions on the issues in dispute.

Mr. Reitman's conduct in connection with the Stipulation undercuts his basic argument on appeal, which is that all of the discovery problems were Mr. Polis's fault. By his own admission, Mr. Reitman is not an expert in bankruptcy procedure. Nevertheless, he took on the role of a lawyer for himself and the Lergs by repeatedly and insistently interjecting himself in the drafting and submission of the Stipulation, and eventually directing Mr. Polis not to sign it. He also failed to cooperate with Mr. Polis by drafting provisions describing his own position on the discovery directed to him. The bankruptcy court correctly held that Mr. Reitman violated the Second Scheduling Order by instructing Mr. Polis not to sign the Stipulation.

## 5.   Reduction of sanctions

Moreover, it is apparent that the bankruptcy court properly recognized that the blame for the discovery disputes did not rest solely with Mr. Reitman. The Motion to Compel requested that the court sanction Mr. Reitman, the Lergs, and Mr. Polis and require them to pay $11,415.10.[13] Although the court sanctioned Mr. Reitman alone, it only sanctioned him $4,265.87, or one-third of Pleasure Point's fees and costs. Simple arithmetic shows that the court assigned only one-third of the blame to Mr. Reitman. Thus, even considering Mr. Polis's responsibility for the discovery dispute, it was not unjust to sanction Mr. Reitman in

---

[13] As noted above, the court used $12,656 as the sum of Pleasure Point's fees and $141.60 in costs, based on a review of the invoices attached to Pleasure Point's supplemental brief to its Motion to Compel.

27

an amount equal to one-third of Pleasure Point's fees and costs.

**B.    The bankruptcy court did not abuse its discretion in denying Mr. Reitman's motion for reconsideration.**

As his second point of error, Mr. Reitman contends that the bankruptcy court erred in denying his motion for reconsideration. Although Mr. Reitman identifies the denial of his motion for reconsideration as one of the points of error and mentions it in a paragraph of his factual history, he does not argue the alleged error anywhere in his opening brief.

As the Ninth Circuit has stated, "we cannot 'manufacture arguments for an appellant' and therefore we will not consider any claims that were not actually argued in appellant's opening brief.  Rather, we 'review only issues which are argued specifically and distinctly in a party's opening brief.'" Indep. Towers of Wash. v. Washington, 350 F.3d 925, 929 (9th Cir. 2003) (quoting Greenwood v. Fed. Aviation Admin., 28 F.3d 971, 977 (9th Cir. 1994)).  Significantly, "[a] bare assertion of an issue does not preserve a claim."  Id. (quoting D.A.R.E. Am. v. Rolling Stone Magazine, 270 F.3d 793, 793 (9th Cir. 2001)). Mr. Reitman identifies the bankruptcy court's denial of his motion for reconsideration as a point of error and includes the relevant parts of the record in his appendix, yet fails to "specifically and distinctly" argue how the bankruptcy court abused its discretion in his opening brief.[14]  See id.; Rule

---

[14] Pleasure Point's answering brief discusses the motion for reconsideration at length.  As a result, Mr. Reitman's reply brief contains some argument regarding the motion for reconsideration.  However, the reply brief still does not
(continued...)

28

8014(a)(8) (an appellant's brief must include "the argument, which must contain the appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"). As such, we do not consider Mr. Reitman's second point of error.

Even if we found it appropriate to address Mr. Reitman's second point of error, we would affirm the bankruptcy court for the reasons stated above. Mr. Reitman argued generally that the court should reverse the sanctions due to his "mistake, inadvertence, surprise, or excusable neglect."[15] However, the motion for reconsideration failed to raise any argument that would alter the bankruptcy court's decision on the Motion to Compel; rather, it merely rehashed his previous arguments. See Fadel v. DCB United LLC (In re Fadel), 492 B.R. 1, 18 (9th Cir. BAP 2013) ("Even if we considered it, the Reconsideration Motion improperly raised legal arguments and/or alleged new facts that Mrs. Fadel could have raised at the initial hearing, and it improperly rehashed arguments she had already presented."). We

[14] (...continued) identify any way in which the bankruptcy court allegedly erred.

Moreover, Mr. Reitman argues that Pleasure Point concedes that the bankruptcy court erred. This is false. Although Pleasure Point addresses the four grounds for sanctions in its discussion of the motion for reconsideration, we construe those arguments as applying to the bankruptcy court's order on the underlying Motion to Compel, as well.

[15] Mr. Reitman argues that his grounds for appeal of the motion for reconsideration are not limited to Civil Rule 60(b)(1), although that is the only ground identified in the motion for reconsideration. However, he does not identify any additional grounds on appeal.

29

have considered all of those arguments and rejected Mr. Reitman's argument that the bankruptcy court committed reversible error.

**CONCLUSION**

For the reasons set forth above, we AFFIRM.