**Ashley Hunt GREENWOOD, Petitioner–Appellant,**

v.

**FEDERAL AVIATION ADMINISTRATION, Respondent–Appellee.**

No. 93–70003.

United States Court of Appeals, Ninth Circuit.

Submitted March 17, 1994 *.

Decided June 28, 1994.

Fed.R.App.P. 34(a) and 9th Cir.R. 34–4.

Michael J. Harrington, Sacramento, CA, for petitioner-appellant.

Jerome P. Jones, Jr., F.A.A., Washington, DC, for respondent-appellee.

Before: D.W. NELSON, BOOCHEVER, and BEEZER, Circuit Judges.

Opinion by Judge BOOCHEVER.

BOOCHEVER, Circuit Judge:

Petitioner-appellant, Ashley Greenwood, challenges the suspension and nonrenewal of his designation as a pilot examiner by the Federal Aviation Administration ("FAA"). The only issues properly raised are claimed due process violations, and we find that Greenwood's procedural due process rights were not violated. Accordingly, we affirm.

## BACKGROUND

Ashley Greenwood was a designated pilot examiner for fourteen years pursuant to § 314(a) of the Federal Aviation Act ("FA Act"), 49 U.S.C. app. § 1355(a) (1988), which allows the FAA to delegate to an examiner the authority to test pilots and to issue pilot certificates. The pilot examiner designation ("PED") is a one-year designation, renewable at the discretion of the Secretary of Transportation. A PED can be revoked, terminated, not renewed or suspended at any time and for any reason deemed appropriate by the Secretary. 49 U.S.C. app. § 1355(a).

The FAA has, however, developed internal procedures to guide the suspension, nonrenewal, or termination of a PED. *See* FAA Order 8700.1, § 9 (1989).

On May 13, 1992, Greenwood was informed that his PED was temporarily suspended pending an investigation of an incident that had occurred on April 12, 1992, during an FAA "flight check" test of Greenwood. During the test, Greenwood's decision to perform an unrequired maneuver had resulted in a hard landing. Greenwood was informed that if he wanted to discuss the matter, he should contact FAA Inspector Howard Manning. Greenwood and Manning met several days later; Manning counselled Greenwood, and Greenwood acknowledged his judgment error and the deficiency in his technique and standards which led to the flight check incident. Greenwood agreed to submit a written explanation of the incident. The suspension of Greenwood's testing authority was then lifted, less than a week after it was imposed, but Manning's report indicated that he had decided to recommend that Greenwood's PED not be renewed when it expired on May 31, 1992.

In response to the counselling, Greenwood wrote to Manning explaining the flight check incident. He also stated in his explanatory letter that he believed that he was not being recommended for renewal because of his age. Manning and Greenwood discussed the April flight check incident again, and Greenwood decided to apply for renewal of his PED despite Manning's recommendation against renewal. His application for renewal was submitted on May 27, 1992, only four days prior to the automatic expiration date of the PED instead of the required sixty days.

On May 29, Greenwood took a flight check test for renewal of the PED with Inspector Rick Mayfield. He did not pass that test, based on a failure to demonstrate adequate performance, and the Oakland Flight Standards District Office declined to renew the PED. Greenwood then wrote to the FAA on June 13, 1992, for information concerning the agency's intentions regarding the renewal of his PED. On June 30, 1992, the FAA Flight Standards Division concurred in the decision of the Oakland office not to renew Greenwood's PED.

Greenwood was informed in writing on August 14, 1992, that his application for renewal of his PED was disapproved. He was offered an opportunity to submit an application for reinstatement of the PED, which he refused. He then wrote to FAA Administrator Thomas Richards, asking him to investigate the disapproval. On November 4, 1992, Thomas Accardi, Director of the FAA Flight Standards Service, wrote to Greenwood stating that he had received a report of the information relevant to Greenwood's situation and that he agreed with the decision of the regional director not to renew the PED. Accardi's reasons included Greenwood's demonstrated lack of competence for renewal, and his failure to complete an appropriate application for reinstatement of designation. Greenwood was again offered the opportunity to reapply and be retested for reinstatement of the PED. He did not accept and instead appealed the agency's decision directly to this court, pursuant to 49 U.S.C. app. § 1486(a) (1988).

## DISCUSSION

Greenwood raises numerous issues for our consideration. He challenges the FAA's decision not to renew his PED as arbitrary and capricious; he claims his due process rights were violated both when his PED was suspended and when it was not renewed; he claims that § 314 of the FA Act is unconstitutional; he challenges the agency's renewal procedures, alleging that they were promulgated in violation of the Administrative Procedure Act ("APA"); he claims his PED was not renewed in violation of APA procedures for protection of licenses; and finally, he claims that the FAA violated his fifth amendment right to equal protection by discriminating against him on the basis of his age. We address each of these claims in turn.

### I. *Substantive Review*

■ Greenwood argues that the FAA's decisions to suspend and not to renew his PED were arbitrary and capricious. We cannot review these contentions, however, because we lack jurisdiction to review the merits of

an FAA decision to suspend or not to renew a PED. *See Adams v. FAA,* 1 F.3d 955, 956–57 (9th Cir.1993) (per curiam) (court of appeals has no jurisdiction to review decision not to renew a PED because there is "no judicially-manageable standard by which [it can] review the FAA administrator's decision"), *cert. denied,* —— U.S. ——, 114 S.Ct. 690, 126 L.Ed.2d 657 (1994).[1]

## II. *Due Process Requirements*

Greenwood argues that his procedural due process rights were violated when the FAA suspended and then decided not to renew his PED. We have jurisdiction to review this claim. *See* 49 U.S.C. app. § 1486(a) (court of appeals has exclusive jurisdiction to review any order issued by the Board or Secretary of Transportation under the statutory provisions of the Federal Aviation Program); *Green v. Brantley,* 981 F.2d 514, 516 (11th Cir.1993) (constitutional challenge to FAA order terminating PED is reviewed exclusively by court of appeals); *Webster v. Doe,* 486 U.S. 592, 603–04, 108 S.Ct. 2047, 2053–54, 100 L.Ed.2d 632 (1988) (in the absence of very explicit language from Congress precluding review of constitutional claims, judicial review of colorable constitutional claims is available, even where statutory claims are otherwise committed to agency discretion).

 To be entitled to procedural due process, a party must show a liberty or property interest in the benefit for which protection is sought. *Morrissey v. Brewer,* 408 U.S. 471, 480–81, 92 S.Ct. 2593, 2599–2600, 33 L.Ed.2d 484 (1972). If the party establishes that such an interest exists, a court determines what process was due and whether the party was actually afforded such process. *Id.* at 481–82, 92 S.Ct. at 2600–01. Here, Greenwood claims that he had both a property and a liberty interest in the PED and that he was therefore entitled to due process in connection with the temporary suspension of his PED and its nonrenewal.

### A. *Temporary Suspension*

 Although our inquiry normally would begin with a determination of whether Greenwood had either a property or liberty interest in the current PED at the time it was suspended, we need not make such a determination here because it is clear that, in any event, Greenwood was afforded due process. *But see White v. Franklin,* 637 F.Supp. 601, 610 (N.D.Miss.1986) (PED qualifies as protected property interest entitled to procedural due process if terminated during its one-year period of duration).

The suspension of Greenwood's PED was a temporary measure, taken after an incident which resulted in concern about the safety of Greenwood's technique and standards and his judgment as a designated pilot examiner. Greenwood was informed in writing that the PED was being temporarily suspended pending investigation of the flight check incident. He was given the name of a person to contact with questions. He was then allowed to explain the situation, and the suspension was lifted, all within a period of less than a week. This was adequate process under the circumstances, even if Greenwood had a property or liberty interest in the current PED. *See Mathews v. Eldridge,* 424 U.S. 319, 332–35, 96 S.Ct. 893, 901–03, 47 L.Ed.2d 18 (1976) (extent of due process required depends upon particular interests affected). *See also Reid v. Engen,* 765 F.2d 1457, 1463 (9th Cir.1985) (written notice and informal conference prior to suspension of pilot certificate for 120 days satisfied due process requirements). Although the notice and opportunity to discuss the suspension came after the suspension was imposed rather than prior to it, the suspension was a necessary safety measure, and the notice, counselling, and removal of the suspension followed promptly. *Cf.* 5 U.S.C. § 558(c) (1988) (APA provision allowing suspension of license without prior notice and opportunity to be heard when public health, interest, or safety so requires). We therefore find that Greenwood received adequate procedural due process as to the temporary suspension of his PED.

---

**1.** Although *Adams* only addressed the nonrenewal of a PED, the FAA's suspension of a PED is pursuant to the same congressional grant of discretionary authority to the Secretary which left us without any judicially manageable standard to review PED renewal decisions in *Adams.*

### B. *Nonrenewal*

■ Greenwood also claims that his procedural due process rights were violated when the FAA made its decision not to renew his PED. We hold that Greenwood did not have a property or liberty interest in a renewed PED, and thus he was not entitled to procedural due process prior to nonrenewal.

■ "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Property interests are not created by the Constitution, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source." *Id.*

In *Roth,* a professor was not rehired after a one-year term at a state university. The decision to rehire an untenured, one-year appointee was committed by state law to the complete discretion of university officials. The Court thus held that Roth had no legitimate claim of entitlement to reemployment. *Id.* at 578, 92 S.Ct. at 2709. If the nonrenewal of his contract had imposed a stigma, the action might have been a deprivation of a liberty interest requiring a hearing, but the mere discharge of an untenured professor imposed no such stigma. *Id.* at 573–74, 92 S.Ct. at 2707–08.

Greenwood's situation is similar to that of the plaintiff in *Roth.* The decision to renew a PED is left to the complete discretion of the granting agency, the FAA. Each holder of a PED must apply for renewal each year, and there is no "right" to automatic renewal. Thus, each year that he held the PED, Greenwood had to apply for renewal and pass a test, and even then, he was not assured that the PED would be renewed. Any expectation that the PED would be renewed was therefore a unilateral expectation on Greenwood's part, not a valid claim of entitlement.

Moreover, no authority from this circuit requires a finding that the renewal of the PED is a protected property interest, although Greenwood cites two cases from this circuit which he claims support his assertion. In *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.,* 958 F.2d 896, 900–03 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2927, 124 L.Ed.2d 678 (1993), we found that under state law an engineer had a protected property interest in an entirely different kind of certificate, an FAA design modification certificate, which was transferrable, licensable, and nonexpiring, unlike the PED. In the other cited case, *Brady v. Gebbie,* 859 F.2d 1543, 1548 (9th Cir.1988), *cert. denied,* 489 U.S. 1100, 109 S.Ct. 1577, 103 L.Ed.2d 943 (1989), we stated that "[w]here state employees serve at the will of the appointing authority, ... there is no ... reasonable expectation of continued employment, and thus no property right." *Brady*'s finding that state employees did not have property interests in their jobs does not support Greenwood's claim that he has such an interest in the renewal of his PED.

We conclude that Greenwood did not have a property interest in a renewed PED.

■ Neither does Greenwood have a liberty interest in a renewed PED. Greenwood claims that he had a liberty interest because he was deprived of his choice of occupation and his reputation was adversely affected. In *Dorfmont v. Brown,* 913 F.2d 1399, 1403 (9th Cir.1990), *cert. denied,* 499 U.S. 905, 111 S.Ct. 1104, 113 L.Ed.2d 214 (1991), we held that because the plaintiff did not have a cognizable property interest in her security clearance, "there [was] no liberty interest in employment requiring such clearance." *Id.* Similarly, because Greenwood does not have a protected property interest in the renewed PED, we hold that he has no liberty interest in employment requiring the use of a PED.

Furthermore, the nonrenewal did not "deprive[ ] [Greenwood] of the right to earn a living. [He] has only been deprived of the ability to pursue employment requiring a [PED]." *Id.* The agency's action did not deprive Greenwood of a career (he is a professionally certified commercial pilot and flight instructor). He simply can no longer pursue a certain line of business with the government.

Greenwood also alleges that he has a liberty interest because his reputation was adversely affected by the non-renewal of the PED. There is no evidence in the record of this adverse effect, nor is there evidence that the FAA purposefully stigmatized him with the dismissal. When a government employee is fired and that firing is accompanied "by a 'charge against him that might seriously damage his standing and associations in his community,'" then a due process right to a hearing might be triggered. *See Owen v. City of Independence*, 445 U.S. 622, 633 n. 13, 100 S.Ct. 1398, 1406 n. 13, 63 L.Ed.2d 673 (1980) (quoting *Roth*, 408 U.S. at 573, 92 S.Ct. at 2707). If, however, the government simply declines to reemploy someone, without making any accompanying charges of dishonesty, immorality, or the like, that act alone normally is not sufficient to impose a stigma that would trigger due process protections. *Roth*, 408 U.S. at 575, 92 S.Ct. at 2708 ("It stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains free as before to seek another."). We therefore find that Greenwood did not have a liberty interest in the renewal of the PED.

Because we find that Greenwood had neither a property nor a liberty interest in a renewed PED, he was not entitled to procedural due process in the renewal process. Accordingly, his claim that his due process rights were violated by the FAA's actions fails.

III. *Statutory Challenge*

Greenwood next argues that § 314 of the FA Act is unconstitutional. The basis of this argument, however, is difficult to decipher. We cannot discern from Greenwood's brief whether he means to allege that the congressional grant of discretion to the FAA is overbroad and therefore unconstitutional, whether he means to assert that the statute is unconstitutional because it precludes judicial review of FAA decisions concerning PEDs, or whether his claim is based on some entirely different ground.

Moreover, Greenwood presents no authorities to support his claims from which we might glean the direction of his challenge to the statute. Nor were his arguments elucidated by his reply brief. In addition, because this argument is raised for the first time on appeal, there is no information from the agency proceedings concerning this claim.

We might otherwise consider a challenge to the constitutionality of a statute even though it was not presented to the agency. *See Reid*, 765 F.2d at 1460–61 (court can review an issue not raised to the agency because agency lacked power or jurisdiction in situations "typified by challenges to the constitutionality of the statute"). Nevertheless, we cannot do so here. We review only issues which are argued specifically and distinctly in a party's opening brief. *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 738 (9th Cir.1986). We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review. *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991) (per curiam). As the Seventh Circuit in *Dunkel* stated aptly: "[j]udges are not like pigs, hunting for truffles buried in briefs." *Id.*

Accordingly, Greenwood's challenge to the constitutionality of § 314 of the Federal Aviation Act is waived due to his failure to present a specific, cogent argument for our consideration.

IV. *Administrative Procedure Act Violations*

Greenwood argues that his rights under the APA were violated when the FAA suspended and then did not renew his PED. He claims both that the FAA's internal procedures for handling PED suspensions and renewals were promulgated in violation of the APA, and that his PED was a "license" under the APA, which was not renewed in violation of APA procedures. Greenwood did not raise these claims before the agency, and thus he has waived his right to raise these claims on appeal from the agency's decision. *See Howard v. FAA*, 17 F.3d 1213, 1216 (9th Cir.1994) (no review of objection to an order of the National Transportation Safety Board

unless raised to the agency, absent reasonable grounds for the failure to raise the objection); *Reid,* 765 F.2d at 1462 (court will not consider constitutional assertion that a procedural error resulted in an excessive sanction since assertion was not raised before the agency); *Tiger Int'l, Inc. v. Civil Aeronautics Board,* 554 F.2d 926, 936 n. 18 (9th Cir.) (when holding company did not argue to the Board that it was constitutionally required to hold a hearing before entering its order, company was not allowed to raise such an argument on appeal from the order), *cert. denied,* 434 U.S. 975, 98 S.Ct. 532, 54 L.Ed.2d 467 (1977).

Although there is some suggestion in the record that the FAA did not follow its own internal review procedures in the renewal process, Greenwood did not specifically and distinctly argue this matter in his opening brief. We therefore do not consider this matter on review. *Miller,* 797 F.2d at 738.

V. *Age Discrimination*

█ Finally, Greenwood asks us to declare that his Fifth Amendment equal protection rights were violated because the primary reason his PED was suspended and not renewed was his age.

█ We do not address this issue because it is not properly developed for review by this court. Our jurisdiction to review agency orders under 49 U.S.C. app. § 1486(a) "depends on the adequacy of the administrative record," because the review must be sufficiently informed to permit a fair evaluation of the claims. *Southern Cal. Aerial Advertisers' Ass'n v. FAA,* 881 F.2d 672, 676 (9th Cir.1989).

█ A sufficient administrative record is one that permits an informed judicial evaluation of the issues raised. *Id.* A limited agency record may preclude review of substantive claims. *Id.* Here, we cannot review Greenwood's age discrimination claim because the only information in the record is Greenwood's own assertions in letters to the FAA that he believes the agency's motivation was his age.

Moreover, Greenwood asks us to declare that his equal protection rights were violated

on the basis of "evidence which will be developed later in the District Court actions," and his assertion that "[it] will be shown later [that] ... discussion [by the FAA] focused on Petitioner's age." Greenwood thus acknowledges that he has yet to make a showing of any kind on his equal protection claim. Not only is the record inadequate for review, there is not even a decision from the agency or any other adjudicator for us to review. We therefore do not consider this issue.

*CONCLUSION*

Although Greenwood raises many issues for our consideration, only the question whether his due process rights were violated is properly before us. We decline to decide whether Greenwood had any protected interest in the current PED when it was suspended, because adequate process was afforded him under the circumstances. Moreover, because Greenwood had no property or liberty interest in a renewed PED, he was not entitled to procedural due process when the agency made its decision not to renew. Accordingly, the decision of the FAA is AFFIRMED.