Ronaldo Sotto **VERGARA**, Petitioner,

v.

**IMMIGRATION NATURALIZATION AND SERVICES**, Respondent.

No. 01–71049.

INS No. A70–638–146.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 11, 2002.

Decided July 24, 2002.

Before HUG, FARRIS, and SILVERMAN, Circuit Judges.

MEMORANDUM [*]

Ronaldo Sotto Vergara, a native and citizen of the Philippines, petitions for review of the BIA's decision dismissing his applications for asylum and withholding of deportation. We have jurisdiction pursuant to 8 U.S.C. § 1105(a), as amended by § 309(c)(4)(A) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. 104–208, 110 Stat. 3009 (Sept. 30, 1996), and we deny the petition. Because the parties are familiar with the factual and procedural history of this case, we do not recount it here except as is necessary to explain our decision.

Vergara's asylum claim fails because the government marshaled substantial evidence showing that Vergara could live safely in Manila, if not in his hometown of Cavite City. According to a report submitted by the State Department, the NPA's [1]

size, resources, and significance have declined dramatically in the twelve years since Vergara left for the United States. The group retains a meaningful presence in only 2% of the country-primarily on the southern island of Mindanao. Additionally, the record reflects that Vergara has never had any direct contact with the NPA, and that, as far as he knows, the NPA has not molested his family in any way during his absence. Finally, Vergara's own testimony indicates that it is unlikely that the NPA would seek to persecute him should he return to the Philippines. Vergara's only direct connection to the NPA is as a cumulative, circumstantial witness to a crime committed twelve years ago-a crime already investigated by the Filipino police. Taken together, these facts make it fair to say that Vergara could avoid persecution by living in Manila.[2]

Because Vergara could live safely in Manila upon his return to the Philippines, he is ineligible for asylum. See 8 C.F.R. § 208.14(b)(1)(i)(B), (b)(2)(ii).[3] It follows that he is also ineligible for withholding of deportation. See *Fisher v. INS*, 79 F.3d 955, 961 (9th Cir.1996) (en banc) (holding that "failure to ... establish eligibility for asylum necessarily results in a failure to establish eligibility for withholding of deportation as well") (internal quotation marks omitted). Thus, the BIA was correct to dismiss Vergara's claims for asylum

---

[*] This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

**1.** "NPA" stands for New People's Army, which is the militant wing of the Communist Party of the Philippines. We assume for the purposes of this disposition that the NPA committed the acts alleged by Vergara.

**2.** Given Vergara's marketable skills as a computer operator, and the fact that he grew up

on Luzon, we also conclude that it is reasonable to expect Vergara to live in Manila.

**3.** Vergara's ability to live safely in Manila would not necessarily defeat his application were he to seek asylum under 8 C.F.R. § 208.13(b)(1)(iii). However, because Vergara has never argued for relief under this narrow exception, we decline to consider it. See *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir.1994) (noting that, as a general rule, we review only issues that are "argued specifically and distinctly in a party's opening brief").

and withholding of deportation.[4]

PETITION FOR REVIEW DENIED.

---

4. That the BIA incorporated the Immigration Judge's findings and conclusions in reaching its decision is unimportant. *See Alaelua v.* *INS,* 45 F.3d 1379, 1382 (holding that the BIA may adopt the Immigration Judge's decision).