Betty JONES, Plaintiff–Appellant,

v.

Willie WILLIAMS; City of Los Angeles; Michael Akana; Grady Dublin; Richard Ludwig; Chester McMillion; Edward Ortiz; Wilson Wong; Alfonso Reyes; Richard A. Brown; Richard Ginelli; Gary Clarke; Robert Holcomb; David Nila; Richard Selleh; Mark Kroecker; Michael Hillman; Michael Downing, individually and in their official capacities, Defendants–Appellees,

and

Daryl Gates; Arthur Daedelow; Martina Villalobos, Defendants.

No. 00–56929.

D.C. No. CV–95–03695–CBM.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 5, 2002.

Decided July 24, 2002.

---

Before O'SCANNLAIN and SILVERMAN, Circuit Judges, and REED,* District Judge.

* The Honorable Edward C. Reed, Jr., Senior United States District Judge for the District of Nevada, sitting by designation.

## ORDER

This court's memorandum disposition filed on April 18, 2002, is withdrawn and replaced by the memorandum disposition filed concurrently with this order. The petition for rehearing and the petition for rehearing en banc are denied in a separate order.

## MEMORANDUM **

Betty Jones ("Jones") appeals the jury verdict for the defendant police officers on her 42 U.S.C. § 1983 claim that the officers violated her Fourth and Fourteenth Amendment rights when they conducted an unreasonable search of her house. We have dealt with the issue of jury instructions in a separate published opinion. This memorandum disposition addresses Jones's issue of alleged attorney misconduct of defense counsel Paul Paquette ("Paquette"). It also addresses Jones's claim of a preserved issue based on *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

■ "We review only issues which are argued specifically and distinctly in a party's opening brief." *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir.1994) (citing *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 738 (9th Cir. 1986)). The extent of Jones's reference to her *Monell* claim was one sentence in her conclusion that asked us to "[p]reserve plaintiff's *Monell* claims, which she expressly preserves." This does not constitute specific and distinct argument. It is simply "a bare assertion [which] does not preserve a claim." *Greenwood*, 28 F.3d at 977. Jones's *Monell* claim was waived for failure to argue it in her opening brief.

The defendants argue that Jones waived her attorney misconduct argument when she failed to move for a mistrial before the district court. We disagree. Failure to move for a mistrial is a factor in assessing prejudice, but does not completely bar our review. *Bird v. Glacier Elec. Coop., Inc.*, 255 F.3d 1136, 1145 (9th Cir. 2001). In addition, Jones's attorney objected to each of the alleged instances of misconduct, thus preserving them for appellate review.

Reversal on the grounds of attorney misconduct is rare, and is granted only when the misconduct permeates an entire proceeding such that "the jury was necessarily influenced by passion and prejudice in reaching its verdict." *Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1107 (9th Cir.1991). To permeate the trial the misconduct does not have to occur throughout the whole trial, but the jury must have been "necessarily prejudiced." *Bird*, 255 F.3d at 1145 & n. 16. When the district court gives curative instructions there is a strong presumption that the jury follows those instructions. *Doe v. Glanzer*, 232 F.3d 1258, 1270 (9th Cir.2000). Jones identifies nine episodes that she argues are misconduct that support reversal.

### 1. Paquette's attempt to rehabilitate Michael Akana with interrogatories.

■ Jones argues that Paquette's attempt to let the jury know that Michael Akana ("Akana") had not actually prepared the responses to the interrogatories demonstrates misconduct. We disagree. All of the objections by Jones's attorney were sustained by the court. When an objection by an attorney is sustained be-

---

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

fore the witness answers the question, there is no prejudice. *United States v. Sarkisian,* 197 F.3d 966, 989 (9th Cir. 1999). Further, the judge explained the law of interrogatories to the jury so that the jury knew that Akana was responsible for his answers even if he did not prepare the responses to the interrogatories.

■ Jones also argues that Paquette's behavior at a later point in the examination demonstrates misconduct. Jones's attorney was reading into the record an answer from an interrogatory, and read it three separate times. Paquette objected to this as repetitious. The court overruled his objection and stated that a statement of a party opponent could be read into the record. Paquette asked, "For the third time?" at which point the judge responded: "Counsel, I'm the judge, I make rulings. You can disagree if you want to. I'd ask you not to do that in the presence of the jury." This was not misconduct because the objection was overruled and Jones's attorney was allowed to·introduce her evidence.

*2. Paquette's mention of the FBI in his direct examination.*

Jones argues that Paquette's mention of the FBI in his examination of Michael Hillman violated an in limine ruling of the court that counsel "not go into such matters." From this statement it is impossible to determine what in limine order Jones alleges Paquette violated, and the record does not indicate that discussing the FBI was off limits. In any case, this questioning was not attorney misconduct because the objection was sustained. *Sarkisian,* 197 F.3d at 989.

*3. Paquette's introduction of the "threat category red" phrase.*

■ Jones argues that Paquette's questioning of Richard Ludwig ("Ludwig") about the phrase "threat category red" was misconduct, because it was an attempt to: (1) violate the court's in limine ruling about the investigation that lead to the search warrant; and (2) introduce inadmissible evidence about the "dangerous" occupants of the house.

Paquette asked Ludwig what "threat category red" meant to him when he saw it. Paquette was trying to use a document containing this phrase to establish what Ludwig and the other officers did as a result of reading the document. This presents no hearsay problem and, contrary to the assertion by Jones's attorney, does relate to the issue of whether the search was reasonable. Therefore, allowing this line of questioning was legally permissible and could not be a ground for reversal on the basis of attorney misconduct.

*4. Paquette's questioning of Ludwig about his breaking the window and entering the house.*

Paquette continued his questioning of Ludwig by asking him about breaking a window to enter Jones's house. Paquette attempted to elicit from Ludwig the reasons why he broke the window. Jones's attorney timely objected to these questions, and the judge sustained the objections. *Sarkisian,* 197 F.3d at 989. No inadmissible evidence was admitted, and nothing Paquette did could have influenced the jury to make a decision based on passion or prejudice. This episode is not misconduct.

*5. Paquette's questioning about the Employee's Report Form.*

■ Jones's attorney argues that Paquette's subsequent attempt to question Ludwig about the Employee's Report

Form and Paquette's comment to the judge constitutes misconduct. Paquette began by asking Ludwig general questions about the document, but when it became clear that some of the questions were designed to elicit the contents of the document Jones's attorney objected, and the judge sustained the objections. After repeated attempts to phrase his questions differently, Paquette moved on. As soon as he began to move on, Jones's attorney objected, and the judge sustained the objection. The focus of the objection is not clear, and Paquette stated that he thought the objection had already been sustained. The judge indicated that it was her belief that Jones's attorney was attempting to explain his objection, to which Paquette responded, "It's sustained."

Rudeness to a judge is unacceptable behavior, but it does not constitute misconduct that warrants a new trial. It is more likely that a jury would view Paquette in a negative light after his examination of Ludwig because of his arrogance in court and his repeated questions that elicited constant objections.

### 6. *Paquette's questioning about a cloned cell phone.*

Paquette asked Gary Clark about the two people taken from Jones's house into custody after the raid. Jones's attorney objected to this questioning, and all the objections were sustained. This is not misconduct. *Sarkisian*, 197 F.3d at 989.

### 7. *Paquette's questioning of LeRoy Bowling.*

■ Jones claims that on four occasions Paquette's questioning of LeRoy Bowling, Jones's son, rose to the level of misconduct: (1) Paquette asked about Bowling's felony convictions before the Court had specifically ruled on their admissibility; (2) Paquette asked Bowling how many times he had been arrested; (3) Paquette asked if Bowling was a member of a gang, the 8 Trey Gangster Crips; and (4) Paquette asked Bowling about his possession of ammunition and guns.

Although the first statement by Paquette violated an in limine order this episode does not appear to be misconduct that would have necessarily made the jury's verdict based on passion and prejudice. It was an isolated and rather vague statement, to which there was a strenuous objection that was sustained.

As to the other questions, Jones's attorney repeatedly objected to the questions, and the judge sustained the objections. Bowling never answered any of the questions. None of these three questions could be considered misconduct. *Sarkisian*, 197 F.3d at 989.

### 8. *Paquette's statements about the "Rampart Scandal."*

■ In his closing argument Paquette mentioned Rafael Perez and the Rampart. Scandal. Jones's attorney objected.

This episode does not appear to be misconduct to warrant reversal. The doctrine of "opening the door" or curative admissibility allows for subsequent questioning about inadmissible evidence raised by the opposing party. *United States v. Hegwood*, 977 F.2d 492, 496 (9th Cir.1992). It appears that Jones's attorney mentioned Rampart by name prior to the closing argument, and also referred to corruption in the LAPD stemming from Rampart without actually using the catch phrase. This would appear to allow Paquette to refer to Rampart. Paquette's attempted

question about Rampart, and his mention of it in the closing argument is not misconduct.

### 9. Paquette's closing argument.

 Jones argues that Paquette committed misconduct in his closing argument by giving inferences to the jury about items not in evidence. In her instructions to the jury the judge stated that arguments and statements by lawyers were not evidence, and we presume that the jury followed those instructions. *Doe*, 232 F.3d at 1270.

None of these actions by Paquette is commendable, and some of them may constitute overzealous advocacy. Nevertheless, it does not appear that Paquette's actions or statements pervaded the entire trial such that the jury would necessarily have reached its verdict based on passion and prejudice. In many cases it appears that Paquette's statements actually served only to harm his position. In all instances, Judge Marshall sustained the proper objections of Jones's attorney and often explained the correct law to the jury or gave them specific instructions about disregarding the testimony.

**AFFIRMED.**

---

\* Pursuant to the permanent rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Attorney General John Ashcroft is the proper respondent.

\*\* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

---

\*\*\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.