FILED

NOV 27 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

CITY OF BURIEN,

Petitioner,

v.

DANIEL K. ELWELL, Acting
Administrator; and FEDERAL
AVIATION ADMINISTRATION,

Respondents.

No. 18-71705

MEMORANDUM[*]

Appeal from the Federal Aviation Administration

Argued and Submitted October 23, 2019
Seattle, Washington

Before: IKUTA and BENNETT, Circuit Judges, and RAKOFF,[**] District Judge.

Petitioner, the City of Burien ("Burien"), is a town located to the west of the

Seattle-Tacoma Airport ("Sea-Tac"). Burien challenges the FAA's decision to

approve a procedure for turning southbound turboprops to the west in certain wind

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

conditions ("the Procedure"). The Procedure automates a formerly manual process of assigning headings to such turboprops, and has the effect of concentrating low-flying planes over Burien after takeoff. Burien argues that the FAA failed to comply with the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 et seq., when it approved the Procedure. We agree in part.

NEPA requires agencies such as the FAA to consider and document the environmental impacts of their actions prior to implementing them. 42 U.S.C. § 4332(2)(c). Although NEPA usually requires agencies to conduct some form of environmental analysis before they act, an agency may identify certain actions as "categorical exclusions" ("CATEXs") that are exempt from environmental review. CATEXs are reserved for actions that do not "individually or cumulatively have a significant effect on the human environment." 40 C.F.R. § 1508.4. While agencies promulgate their own rules for identifying and applying CATEXs, all agencies must "provide for certain extraordinary circumstances in which a normally excluded action may have a significant environmental impact" such that environmental review is required. *Id.*

The FAA has promulgated a series of CATEXs, listed in FAA Order 1050.1F. The same Order explains that extraordinary circumstances exist such that application of these CATEXs is inappropriate if (1) one of twelve enumerated

"extraordinary circumstances" exists and (2) the action "may have a significant impact." One such extraordinary circumstance includes actions likely to "cumulatively create a significant impact on the human environment." Before applying a CATEX, the FAA must prepare "concise" supporting documentation citing the CATEX used, describing why its application is appropriate, and explaining that there are no relevant extraordinary circumstances.

In this case, the FAA determined that environmental review was not required before it approved the Procedure because this action fell within a CATEX for "modifications to currently approved procedures conducted below 3,000 feet [above ground level] that do not significantly increase noise over noise sensitive areas." FAA Order 1050.1F, ¶ 5-6.5i. While Burien argues that this determination was arbitrary and capricious for multiple reasons, we are persuaded by only one of these reasons. We agree that the FAA acted arbitrarily and capriciously by failing to consider all "reasonably foreseeable" future actions at Sea-Tac in its analysis of whether a cumulative impacts extraordinary circumstance existed. 40 C.F.R. § 1508.7.

Specifically, even though the FAA considered a number of past, present, and reasonably foreseeable future actions within the study area in its cumulative impacts analysis, it failed to even mention future actions taking place at Sea-Tac

3

itself, even to dismiss them as not reasonably foreseeable. Most notably, the FAA failed to address any cumulative impacts that might stem from projects described in Sea-Tac's Sustainable Airport Master Plan ("SAMP"). Given that the FAA was involved in the funding and development of the SAMP, and that a final SAMP document listing specific expansion projects was published only weeks after the Procedure was approved in April 2018, the FAA had to be well aware of these planning documents and the substantial airport expansion described in them. The FAA should have addressed them in its cumulative impacts analysis.

The dissent primarily relies on case law suggesting that a "reasonably foreseeable future action" does not include a project "that is not yet proposed" and is "remote in time." *Jones v. Nat'l Marine Fisheries Serv.*, 741 F.3d 989, 1000 (9th Cir. 2013). But here, the FAA's own "Desk Reference" that guides its interpretation of relevant categorical exclusions expressly states that "[a]n action

4

may be reasonably foreseeable even in the absence of a specific proposal."[1] FAA

1050.1F Desk Reference (July 2015). The Desk Reference further provides that the

existence of "planning documents" (like the SAMP), even if short of an official

proposal, provides important evidence for determining whether a future project is

reasonably foreseeable. In such circumstances, even if the FAA concludes that the

planned projects are "improbable or remote," the Desk Reference specifically

recommends that such actions "be mentioned in the NEPA document with an

indication that they are not reasonably foreseeable." Indeed, the agency in *Jones*

---

[1] The dissent errs in suggesting that this internal guidance document is not a proper source of interpretive guidance. Although the dissent is correct that the Desk Reference states that it "may not be cited as the source of requirements under laws, regulations, Executive Orders, DOT or FAA directives, or other authorities," it omits the first clause of the sentence which explicitly states that the "Desk Reference <u>may</u> be cited only as a reference for the guidance it contains." In fact, the FAA quoted the Desk Reference in its answering brief when attempting to define future actions as improbable or remote even though they have been mentioned in planning documents. Thus, while the Desk Reference is not an independent source of law regulating the FAA, it can properly serve as guidance for interpreting FAA Order 1050.1F, which is an independent source of law regulating the FAA. *See Alaska Dep't of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 464 (2004) (finding that although internal guidance lacks dispositive force, "cogent administrative interpretations not the products of formal rulemaking nevertheless warrant respect" (citations and internal changes omitted)). *Probert v. Family Centered Servs. of Alaska, Inc.*, 651 F.3d 1007 (9th Cir. 2011), does not change this outcome. That case found that internal guidance was not "a proper source of interpretive guidance" where the guidance explained that "it is not used as a device for establishing interpretive policy." *Id.* at 1012. The Desk Reference contains no such language.

had addressed the future plans raised by plaintiffs and declined to examine their cumulative impacts, noting significant challenges facing the potential future projects and that the agency "would consider the impacts of future projects if permits were sought for them." 741 F.3d at 995, 1000-1001. The agency, by failing to even mention the SAMP thus did not meet its obligation to explain its actions under NEPA. *Alaska Ctr. For Env't v. U.S. Forest Serv.*, 189 F.3d 851, 859 (9th Cir. 1999) ("When an agency decides to proceed with an action in the absence of an EA or EIS, the agency must adequately explain its decision.").

The dissent further asserts that the FAA did not need to consider the SAMP in its cumulative impacts analysis because this court had previously held that approving a change in flight pattern for turboprops does not produce a significant impact. *See Barnes v. U.S. Dep't of Transp.*, 655 F.3d 1124 (9th Cir. 2011). However, the language from *Barnes* that the dissent primarily relies on was focused on indirect effects under 40 C.F.R. § 1508.8(b), rather than cumulative impacts under 40 C.F.R. § 1508.7, and is not controlling here. 655 F.3d at 1137-39.

To the extent the dissent reads FAA Order 1050.1F to release the FAA from any obligation to consider whether extraordinary circumstances exist upon a generalized finding that an action does not generate a significant impact, it reads FAA Order 1050.1F in a manner that conflicts with 40 C.F.R. § 1508.4. The

6

obligation to conduct an extraordinary circumstances analysis imposed by 40 C.F.R. § 1508.4 arises once an agency has already found that an action does not "individually or cumulatively have a significant effect on the human environment" -- in other words, once the agency has preliminarily found that application of a CATEX is appropriate. However, if a preliminary finding that application of a CATEX is appropriate meant that the agency did not have to conduct an extraordinary circumstances analysis, there would be no situation in which the agency would have to do so. Adopting the dissent's reading would thus render the first prong of FAA Order 1050.1F's extraordinary impacts definition superfluous, and violate 40 C.F.R. § 1508.4's requirement that all agencies "provide for certain extraordinary circumstances in which a normally excluded action may have a significant environmental impact."

The bottom line is that, even though the FAA's analysis rambles on for 128 pages, that cannot excuse its failure to even address whether a "Master Plan" for a major expansion of the airport -- a plan that the FAA staff had commissioned and that was only weeks away from being published -- encompassed a "reasonably foreseeable future action" that should be considered within the FAA's cumulative impact analysis.

We thus GRANT the petition for review in part and REMAND this case to the FAA with instructions to consider the potential cumulative impact of all relevant reasonably foreseeable future actions -- including those which may exist in the SAMP documents -- as part of its extraordinary circumstances analysis pursuant to 40 C.F.R. § 1508.7.[2]

**DENIED IN PART, GRANTED AND REMANDED IN PART.**

---

[2] We also GRANT the Petitioner's motion to correct the record as to Exhibit 1 and motion for consideration of extra-record evidence as to Exhibit 5. We DENY the motion for consideration of extra-record evidence as to Exhibits 2, 3, 4, 6, and 7.

*City of Burien v. FAA*, 18-71705

IKUTA, Circuit Judge, dissenting:

"It's never enough, no it's never enough, No matter what I say" are the lyrics to a song by an American heavy metal band,[1] but it could be the anthem of a federal agency attempting to comply with the National Environmental Policy Act (NEPA). Here the Federal Aviation Administration (FAA) provided a thorough 128-page analysis, which established beyond doubt that its modification to a flight plan fits into a categorical exclusion and does not create an "extraordinary circumstance." Indeed, the majority does not claim otherwise; instead, it merely repeats the refrain that the FAA's analysis was "never enough," because it did not consider the cumulative impacts of speculative project ideas that were neither adopted nor proposed by the Port of Seattle for its airport. I dissent.

I

NEPA requires federal agencies taking "major Federal actions significantly affecting the quality of the human environment," 42 U.S.C. § 4332, to take a "hard look" at the environmental consequences of a decision, *Save the Peaks Coal. v. U.S. Forest Serv.*, 669 F.3d 1025, 1036 (9th Cir. 2012). The agency that promulgates NEPA regulations, the Council on Environmental Quality (CEQ),

---

[1] Five Finger Death Punch, *Never Enough*, The Way of the Fist (Prospect Park Records 2007).

provides that agencies may categorically exclude certain types of federal actions "which do not individually or cumulatively have a significant effect on the human environment" from the requirement to prepare an environmental assessment or an environmental impact statement. 40 C.F.R. § 1508.4. The regulations also require agencies to consider exceptions to these exclusions by providing for "extraordinary circumstances in which a normally excluded action may have a significant environmental effect." *Id.*

The FAA has developed a guidance document, Order 1050.1F, for complying with NEPA's requirements. Among other things, the Order includes a list of categorical exclusions. *See* FAA Order 1050.1F, Chapter 5. One such exclusion is set forth in Paragraph 5-6.5(i), which provides that "modifications to currently approved procedures conducted below 3,000 feet AGL that do not significantly increase noise over noise sensitive areas" are exempt from NEPA's requirement to prepare further environmental analysis. The Order also provides that "extraordinary circumstances" constitute an exception to those exclusions. Under Paragraph 5-2, "an extraordinary circumstance exists if a proposed action involves" two circumstances: (1) the proposed action must involve any of a list of 12 circumstances described in Paragraph 5-2(b); and (2) the proposed action "has the potential for a significant impact." *Id.* ¶ 5-2(b). One of the 12 listed

circumstances is a catchall: a project that has a "[l]ikelihood to directly, indirectly, or cumulatively create a significant impact on the human environment." *Id.* ¶ 5-2(b)(12).

We give broad deference to the FAA's decisions regarding its NEPA compliance. We have explained that "an agency's interpretation of the meaning of its own categorical exclusion should be given controlling weight unless plainly erroneous or inconsistent with the terms used in the regulation." *Alaska Ctr. For Env't v. U.S. Forest Serv.*, 189 F.3d 851, 857 (9th Cir. 1999). We also defer to the agency's determination as to whether a proposed action falls within the "extraordinary circumstances" exception. *See Id.* "Once the agency considers the proper factors and makes a factual determination on whether the impacts are significant or not, that decision implicates substantial agency expertise and is entitled to deference. *Id.*

In this case, the FAA proposed a modification to the flight plan used by southbound turboprops. After determining the modification would not have significant noise effects, the FAA concluded that the modification to the flight plan fell within the scope of categorical exclusion Paragraph 5-6.5(i) and that no extraordinary circumstances exist. Therefore, the FAA concluded that no further NEPA review was required. Under our deferential review, the FAA's reasoning

3

and conclusions are unassailable, and the majority errs in crediting the City's argument.

## II

The City's challenge to the FAA's compliance is typical of this sort of environmental litigation: it argues that the FAA failed to do enough in analyzing the effects of the flight plan modification. The City frames this challenge as an argument that the FAA's proposed flight plan modification constituted an extraordinary circumstance under the FAA's Order. Under the first prong of the FAA's extraordinary circumstance exception, the City claims the project has a "[l]ikelihood to directly, indirectly, or cumulatively create a significant impact on the human environment." Order 1050.1F, ¶ 5-2(b)(12). Under the second prong, the City claims that the proposed action "has the potential for a significant impact." *Id.* ¶ 5-2(b).

Neither prong is satisfied. On its face, the City's claim that the proposed project involves a "[l]ikelihood to directly, indirectly, or cumulatively create a significant impact on the human environment" is entirely meritless. The FAA thoroughly examined the potential impacts of the flight plan modification, including providing extensive studies of the noise impacts. The FAA's conclusion that the flight plan modification would not have such impacts is well supported,

4

and the City does not provide any evidence to the contrary.

Instead, the City argues, and the majority agrees, that the FAA made a procedural error by failing to consider the cumulative impacts of the flight modification program together with the Seattle-Tacoma Airport's Sustainable Airport Master Plan (SAMP). As a result, according to the City and the majority, the FAA's decision to rely on the categorical exclusion for the flight plan modification was arbitrary and capricious, and its NEPA compliance must be redone.

This conclusion is flatly wrong. A cumulative impact is "the impact on the environment which results from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions." 40 C.F.R. § 1508.7. A "reasonably foreseeable future action" does not include a project "that is not yet proposed" and is "remote in time." *Jones v. Nat'l Marine Fisheries Serv.*, 741 F.3d 989, 1000 (9th Cir. 2013). A project is generally not "proposed" until the agency has issued a Notice of Intent to commence NEPA compliance. *N. Alaska Envtl. Ctr. v. Kempthorne*, 457 F.3d 969, 980 (9th Cir. 2006). Unless a project has been proposed and is not too remote in time, "a cumulative effects analysis would be both speculative and premature." *Jones*, 741 F.3d at 1000 (9th Cir. 2013) (citation omitted); *see also League of Wilderness Defs./Blue Mountains*

5

*Biodiversity Project v. Connaughton*, 752 F.3d 755, 762 (9th Cir. 2014) ("Although projects need not be finalized before they are reasonably foreseeable, they must be more than merely contemplated.") (internal quotation marks omitted) (citations omitted)).

In this case, the FAA discharged its obligation to consider cumulative impacts of eight proposed projects, but reasonably concluded that the projects discussed in the SAMP were too speculative and remote in time. The 2015 SAMP does not identify any projects at all; rather, it merely "describes the goals and objectives established by the Port of Seattle commission to guide the SAMP, the SAMP process, and how SAMP goals and objectives will guide preparation of a recommended development plan." In other words, it was a plan to make a plan. The 2018 SAMP (which was not completed when the FAA decided to rely on the categorical exclusion) described "an optimal layout of facilities required to satisfy the unconstrained 20-year forecast demand," including a set of "enabling and capacity improvement projects required to accommodate forecast demand in 2027," which it labeled "near-term projects." This planning document, prepared by consultants for the Port's consideration, is far removed from a proposed agency action; the Port did not issue any Notice of Intent for any of the projects described in the SAMP, nor does the SAMP suggest that the Port was close to doing so. At

most, these projects were "merely contemplated." *Connaughton*, 752 F.3d at 762 (internal quotation marks omitted). It would be speculative and premature for the FAA to consider the cumulative impacts of a flight modification along with these consultant planning ideas. *See Kleppe v. Sierra Club*, 427 U.S. 390, 406 (1976); *Connaughton*, 752 F.3d at 762.

The majority seems to think the FAA was arbitrary and capricious merely because it failed to mention the SAMP. Again, this echoes the typical demand of many litigants that agencies must always do more to comply with NEPA. But an agency need not provide documentation on every piece of available information before relying on a categorical exclusion. Indeed, the CEQ "strongly discourages procedures that would require the preparation of additional paperwork to document that an activity has been categorically excluded." Guidance Regarding NEPA Regulations, 48 Fed. Reg. 34,263-01, 34,265 (July 28, 1983). Here, the FAA did all that was required under its guidance document, Order 1050.1F, and more: it issued a 128-page Categorical Exclusion document in which it (1) cited to the applicable categorical exclusion, (2) described how the flight modification plan fell within the categorical exclusion, and (3) explained why there are no extraordinary circumstances that would preclude the flight modification plan from being categorically excluded. The majority errs in requiring the equivalent of an

environmental impact statement from the FAA.

In invalidating the FAA's decision as arbitrary and capricious, the majority relies primarily on an internal FAA guidance document, FAA 1050.1F Desk Reference (July 2015). Maj. at 4–5. The majority neglects to note that the Desk Reference itself states that it "may not be cited as the source of requirements under laws, regulations, Executive Orders, DOT or FAA directives, or other authorities." Such an internal guidance document does not impose judicially enforceable duties on the FAA, *cf. Lockwood v. Comm'r Social Sec. Admin.*, 616 F.3d 1068, 1072 (9th Cir. 2010), nor is it "a proper source of interpretive guidance," *Probert v. Family Centered Servs. of Alaska, Inc.*, 651 F.3d 1007, 1012 (9th Cir. 2011). Accordingly, the Desk Reference provides no support for the majority's conclusion that the FAA failed to discharge its obligations under NEPA.[2] But even if the FAA were legally required to follow the Desk Reference (and even if the City had raised that argument), any error by the FAA in failing to state expressly that the SAMP ideas are improbable or remote constitutes harmless error under basic principles of administrative law. *See* 5 U.S.C. § 706; *Ground Zero Ctr. for Non-Violent Action*

---

[2] Despite the majority's heavy reliance on the Desk Reference, the City itself did not specifically and distinctly argue that the FAA failed to follow the Desk Reference and that failing to do so made its decision arbitrary and capricious. Because "[w]e will not manufacture arguments for an appellant," the majority errs in doing so here. *Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994).

*v. U.S. Dep't of Navy*, 860 F.3d 1244, 1252 (9th Cir. 2017) ("When considering an agency's failure to comply with NEPA, we examine whether the error materially impeded NEPA's goals—that is, whether the error caused the agency not to be fully aware of the environmental consequences of the proposed action, thereby precluding informed decisionmaking and public participation, or otherwise materially affected the substance of the agency's decision." (internal quotation marks omitted)).

Even if the first prong of the FAA's extraordinary circumstances exception is satisfied, the second is not, because the City has not established that the flight plan modification "[m]ay have a significant impact" on the human environment. In fact, the City fails to offer any theory about how the flight plan modification will have such an impact. The City vaguely suggests that the flight plan modification, in conjunction with the speculative SAMP, would increase demand at the airport and therefore have a growth-inducing effect. But we have conclusively rejected that theory. *See Barnes v. U.S. Dep't of Transp.*, 655 F.3d 1124 (9th Cir. 2011). As we explained in *Barnes*, the FAA does not have to account for the growth-inducing effects of a flight arrival path or changes in flight patterns because such changes (as opposed to "a major ground capacity expansion project") "increase demand only marginally, if at all." *Id.* at 1138. In other words,

9

changes in flight patterns do not have a significant growth-inducing impact. Accordingly, the FAA's flight plan modification is deemed to increase demand only marginally, and therefore is not a "significant impact" for purposes of the second prong of the definition for "extraordinary circumstances." The City does not even suggest (let alone establish) any other theory as to how the flight plan modification, considered with the SAMP, could have a significant impact on the human environment.

In sum, the FAA followed its Order and appropriately determined that the flight plan modification was covered by a categorical exclusion. The City has failed to provide any evidence indicating that the FAA erred in not expressly analyzing the SAMP, or that the flight plan modification has any significant impact on the human environment. In fact, neither the City nor the majority can identify any reason that the proposed flight plan modification does not fit within the FAA's categorical exclusion. In holding otherwise, the majority not only fails to give proper deference to the FAA, but also provides encouragement to the City's litigation strategy of "never enough." I dissent.