NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

APR 29 2022

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

WILLIAM DILLON; et al.,

Plaintiffs-Appellants,

v.

CLACKAMAS COUNTY; ANGELA BRANDENBURG,* in her official capacity as Sheriff; and CRAIG ROBERTS, in his individual capacity,

Defendants-Appellees.

No.   20-35544

D.C. No. 3:14-cv-00820-YY

MEMORANDUM**

Appeal from the United States District Court
for the District of Oregon
Michael H. Simon, District Judge, Presiding

Argued and Submitted February 10, 2022
Portland, Oregon

Before:  PAEZ and NGUYEN, Circuit Judges, and EATON,*** Judge.

Plaintiffs-Appellants  William  Dillon,  Scott  Graue,  David  Hodges,  and

---

\*      Angela Brandenburg is substituted for her predecessor, Craig Roberts, as Clackamas County Sheriff. *See* Fed. R. App. P. 43(c)(2).

\**      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\***      Richard K. Eaton, Judge of the United States Court of International Trade, sitting by designation.

Albert Love ("Plaintiffs"), former inmates of Clackamas County Jail, sued Defendants-Appellees Clackamas County and Clackamas County Sheriff Craig Roberts[1] ("Defendants"), pursuant to 42 U.S.C. § 1983, for the alleged violation of their Fourth Amendment and state privacy rights.[2]

Plaintiffs' claims stem from routine visual strip searches that were conducted, in accordance with jail policy, when they and other inmates returned to the jail from court proceedings, and an emergency, visual strip search that was conducted on October 10, 2012, in response to the removal of a piece of metal from a computer in the jail's first-floor law library.

Before us is Plaintiffs' appeal of the district court's disposition, on summary judgment, denying their claims that the strip searches, as well as the jail's policy authorizing the searches, were unreasonable under the Fourth Amendment and

---

[1]     The district court granted Sheriff Roberts' motion for summary judgment as to Plaintiffs' Fourth Amendment claims brought against him in both his individual and official capacities. Plaintiffs have waived their Fourth Amendment claims against Sheriff Roberts by failing to raise them on appeal. *See Mendoza v. Block*, 27 F.3d 1357, 1363 (9th Cir. 1994).

[2]     Plaintiffs further alleged that the strip searches amounted to cruel and unusual punishment under the Eighth Amendment. They have forfeited this claim on appeal, however, because their opening brief fails to present any intelligible argument challenging the district court's disposition of their Eighth Amendment claim. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("[W]e 'review only issues which are argued specifically and distinctly in a party's opening brief.'" (quoting *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994))).

resulted in an invasion of their privacy rights under Oregon law.[3]

We have jurisdiction under 28 U.S.C. § 1291, and review the district court's grant of summary judgment de novo. *See Oswalt v. Resolute Indus., Inc.*, 642 F.3d 856, 859 (9th Cir. 2011). For the following reasons, we affirm.

1.    Plaintiffs have failed to show that a genuine issue of material fact exists as to whether the strip searches were unreasonable under the Fourth Amendment.

The Fourth Amendment guarantees "[t]he right of the people to be secure . . . against unreasonable searches and seizures." U.S. Const. amend. IV. "This right extends to incarcerated prisoners; however, the reasonableness of a particular search is determined by reference to the prison context." *Michenfelder v. Sumner*, 860 F.2d 328, 332 (9th Cir. 1988). Determining whether a strip search is reasonable under the Fourth Amendment "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). In balancing these competing interests, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.*

We turn first to the routine, return-from-court strip searches. Plaintiffs argue

---

[3]    Plaintiffs also challenge the district court's decision to grant Defendants' motion to decertify the class based on its finding that Plaintiffs' counsel could not adequately represent the class. *See* Fed. R. Civ. P. 23(a)(4). Because we affirm the summary judgment disposal of Plaintiffs' substantive claims, we do not reach the decertification issue.

that these searches were unreasonable under the Fourth Amendment because they could be observed by female deputies who monitor the jail's closed-circuit television system in the control room.[4] We have previously considered this kind of claim, and our case law makes clear that the mere possibility that a strip search of male inmates could be observed by female deputies, without more, is not enough to establish a Fourth Amendment violation. Specifically, we have held that "assigned positions of female guards that require only infrequent and casual observation, or observation at distance, and that are reasonably related to prison needs are not so degrading as to warrant court interference." *Michenfelder*, 860 F.2d at 334 (citing *Grummett v. Rushen*, 779 F.2d 491, 494-95 (9th Cir. 1985)).

There is no dispute that assigning female deputies to work in the jail's control room is reasonably related to prison needs. *See id.* (recognizing "both the interest in providing equal employment opportunities and the security interest in deploying

---

[4] Plaintiffs also alleged that the strip searches were unreasonable because of the manner (*i.e.*, in groups where they could be viewed by other male inmates also being searched) and place (*i.e.*, in an alcove where they could be seen by deputies working in a nearby records room and inmates and staff passing by) of the searches. That the searches were conducted in small groups, however, without more, does not violate the Fourth Amendment. *See Thompson v. Souza*, 111 F.3d 694, 701 (9th Cir. 1997) (rejecting the argument that strip searches must be conducted "out of view of the other prisoners"). Further, Plaintiffs' assertions as to the visibility of the alcove are not borne out by the record. Therefore, while the facts relating to how and where the searches were conducted are not in dispute, those that Plaintiffs point to are insufficient to overcome Defendants' motion for summary judgment as a matter of law.

available staff effectively" as legitimate penological interests). Thus, to sustain their Fourth Amendment claim, Plaintiffs must present evidence that the female deputies who worked in the control room were able to observe the strip searches of male inmates in a manner that was more than just infrequent, casual, or from a distance. *See id.* Plaintiffs have failed to do so.

Here, no party disputes that the jail's randomly rotating cameras could show, on an incidental basis, inmates as they were undergoing visual strip searches. The evidence demonstrates, however, that the quality of the camera images was low and at times out of focus because of the location of the cameras and their distance from the searches. Moreover, while female deputies were assigned to work in the control room, only seven out of the forty-seven deputies employed by the jail during the relevant time were female, and they were often prioritized in roles that were required to be performed by a female deputy (*i.e.*, visual strip searches and pat-downs of female inmates). Further, control room deputies are trained to focus on high-risk areas, which do not include the areas where inmates are subject to strip searches after returning from court.

Thus, to the extent female deputies working in the control room were able to observe the strip searches, the record shows that their observations were infrequent, casual, and from a distance. We therefore hold that the district court did not err when it granted Defendants' motion for summary judgment as to Plaintiffs' Fourth

5

Amendment claim in connection with the routine, return-from-court strip searches.

We turn next to the emergency strip search conducted on October 10, 2012. Plaintiffs argue that this search was unreasonable under the Fourth Amendment because it was an "exaggerated response" to a "non-emergency" situation. Plaintiffs, however, fail to meet their "burden of showing [Defendants] intentionally used exaggerated or excessive means to enforce security." *Michenfelder*, 860 F.2d at 333 (citations omitted).

Plaintiffs have presented several theories as to why they believe the search was unreasonable under the Fourth Amendment, but have failed to support these theories with any evidence. For instance, Plaintiffs have offered no evidence indicating that Defendants' response to the discovery of the missing piece of metal was exaggerated or excessive. Nor have they offered evidence showing that the scope, manner, or place of the emergency strip search was unreasonable.

Defendants, on the other hand, have presented evidence showing the existence of an emergency situation and the need to resolve it expeditiously. Specifically, Defendants have shown that the piece of metal, capable of being turned into a knife, had been broken off a computer in the jail's first-floor law library, and that it was more likely than not in the possession of an inmate located in the jail's first-floor housing unit. *See, e.g.*, *Michenfelder*, 860 F.2d at 332-33 ("[S]o long as a prisoner is presented with the opportunity to obtain contraband or a weapon while outside of

6

his cell, a visual strip search has a legitimate penological purpose." (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987))). The record also shows that conducting the strip search in groups, no more than six inmates at a time, was not an exaggerated or excessive response. Rather, it was a reasonable strategy to deter improper conduct, considering the large area to be searched and the need to move quickly to limit the opportunity for the piece of metal to be hidden by an inmate. *See Byrd v. Maricopa Cnty. Sheriff's Dep't*, 629 F.3d 1135, 1143 (9th Cir. 2011) (en banc) (finding that the place of the strip search was reasonable when it was conducted in a prison common area where other inmates were present).

We therefore hold that the district court did not err when it granted Defendants' motion for summary judgment as to Plaintiffs' claim stemming from the emergency strip search because Plaintiffs have failed to provide any evidence indicating that the place, manner, or scope of the search was unreasonable, or that Defendants' response to the emergency situation was exaggerated or excessive.

2.      Plaintiffs next claim that a genuine issue of material fact exists as to whether the jail's policy authorizing the routine, return-from-court strip searches was unreasonable under the Fourth Amendment.

When a jail's strip search policy allegedly "impinges on inmates' constitutional rights," the policy will be upheld as valid "if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89.

In *Bull v. City and County of San Francisco*, we found a valid, rational connection between a prison regulation authorizing visual strip searches of inmates prior to their admission into the general prison population, and the legitimate penological interest of maintaining security for inmates and employees by preventing contraband smuggling. 595 F.3d 964, 976 (9th Cir. 2010) (en banc). Importantly, our finding was based on a well-documented record of contraband in the jail and the testimony of a jail administrator regarding the "utmost importance" of keeping contraband out of the jail for the "safety and well being of all inmates, staff and the public." *Id.*

As in *Bull*, the record here shows a serious problem with contraband at the jail. Indeed, contraband was found on numerous occasions during a search. Additionally, in 2015, near the time when the strip searches in this case were conducted, almost six-thousand items of contraband were confiscated by security at the main entrance of the Clackamas County Circuit Court. The record contains a declaration from the jail's commander stating that the strip searches are necessary to address "the problem of contraband in the jail and the risks presented by contraband of all kinds in the general population." The declaration further provides that the modification of the strip search policy "would create an unworkable circumstance that would greatly affect the time and administration of jail operations at the risk of the safety and security to everyone inside the jail."

Plaintiffs provide no evidence disputing the seriousness of the jail's contraband problem. Nor do they dispute that controlling contraband within the jail is a legitimate penological interest. *See Nunez v. Duncan*, 591 F.3d 1217, 1228 (9th Cir. 2010) (citation omitted) ("Controlling contraband within a prison is a legitimate penological interest . . . .").

Therefore, we conclude that the jail's strip search policy is reasonably related to the legitimate penological interest of preventing the concealment of contraband by inmates returning from court proceedings.

3.    Finally, we turn to Plaintiffs' invasion of privacy claim brought against Defendants under Oregon law. In their opening brief, Plaintiffs assert, broadly, that Defendants violated their state privacy rights under Oregon Revised Statute § 30.831(1)(a).[5] Beyond this assertion, however, Plaintiffs provide no analysis to assist the court in evaluating their legal challenge. Instead of making legal arguments, Plaintiffs merely recite the statute's text and assert: "This occurred,

---

[5]    Oregon Revised Statute § 30.831(1)(a) establishes a cause of action for invasion of personal privacy when:

> The defendant knowingly made or recorded a photograph, motion picture, videotape or other visual recording of the plaintiff in a state of nudity without the consent of the plaintiff, and at the time the visual recording was made or recorded the plaintiff was in a place and circumstances where the plaintiff had a reasonable expectation of personal privacy.

Or. Rev. Stat. § 30.831(1)(a) (2021).

hence the [privacy] claim prevails."

It is Plaintiffs' burden on appeal to present the court with legal argument to support their claim and, absent such argument, we decline to craft their claim for them. Indeed, "[o]ur circuit has repeatedly admonished that we cannot 'manufacture arguments for an appellant' and therefore we will not consider any claims that were not actually argued in [Plaintiffs'] opening brief." *Indep. Towers of Wash.*, 350 F.3d at 929 (quoting *Greenwood*, 28 F.3d at 977).

Therefore, because Plaintiffs make no discernible legal argument challenging the district court's dismissal of their state privacy claim, they forfeit this claim on appeal.

**AFFIRMED.**