NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

|  |  |
|---|---|
| In re:<br>THEOS FEDRO HOLDINGS, LLC,<br><br>           Debtor. | BAP No. NC-23-1103-SCB<br><br>Bk. No. 21-30202 |
| PHILIP ACHILLES, Individually and as Sole Shareholder and Managing Member of Theos Fedro Holdings, LLC and Sole Trustee of the Achilles Trust,<br>           Appellant,<br>v.<br>JANINA M. HOSKINS, Chapter 11 Trustee; PENDER CAPITAL ASSET BASED LENDING FUND I, L.P.; LABOR COMMISSIONER OF THE STATE OF CALIFORNIA,<br>           Appellees. | MEMORANDUM* |

Appeal from the United States Bankruptcy Court
for the Northern District of California
Dennis Montali, Bankruptcy Judge, Presiding

Before: SPRAKER, CORBIT, and BRAND, Bankruptcy Judges.

---

    * This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

## INTRODUCTION

Appellant Philip Achilles is the sole and managing member of debtor Theos Fedro Holdings, LLC ("Debtor"). He appeals from the bankruptcy court's order approving the compromise between chapter 11[1] trustee Janina M. Hoskins and Pender Capital Asset Based Lending Fund I, LP ("Pender"). The compromise also settled a lien priority dispute between Pender and the Labor Commissioner for the State of California ("Commissioner").

Achilles lacks Article III standing. Hoskins' settlement with Pender did not prejudice his rights or interests. Nor did it impose any burden on him. Accordingly, this appeal will be DISMISSED for lack of standing. But even if we were to reach the merits, we would AFFIRM. Achilles' appellate brief and accompanying papers are bereft of any arguments that coherently challenge the compromise order on appeal.

## FACTS[2]

**A.    The key pre-bankruptcy events and litigation**.

Debtor borrowed $3.6 million from Pender in December 2017. The

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] We exercise our discretion to take judicial notice of documents electronically filed in the underlying bankruptcy case and the related adversary proceedings. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

loan was secured by commercial real property located on Ellis Street in San Francisco, as well as the rents generated by the property. Before it funded the loan, Pender required Achilles to create Debtor and convey the Ellis property to the new limited liability company from his personal trust. However, prior to the recording of the deed conveying the property to Debtor, the Commissioner recorded an abstract of judgment against Achilles, which encumbered the Ellis property.

Debtor's transaction with Pender led the Commissioner to commence state court litigation to establish the priority of its recorded judgments. Additionally, Debtor and Achilles sued Pender in state court asserting various claims for breach of contract, fraud, unfair competition, quiet title, negligence, and usury. Pender later removed the action to the bankruptcy court.

**B.    The bankruptcy case and the disposition of Debtor's and Achilles' lender liability claims.**

Debtor filed its chapter 11 petition in March 2021. In July 2021, the bankruptcy court ordered the appointment of a chapter 11 trustee. Janina M. Hoskins was appointed to serve as trustee. In November 2021, Hoskins substituted into the bankruptcy court lender liability action on behalf of the bankruptcy estate. Hoskins twice amended her complaint, once in May 2022 and again in August 2022.

The bankruptcy court dismissed Hoskins' second amended complaint with leave to amend but dismissed her third amended complaint

3

with prejudice. As a result, the only pending matters left in the adversary proceeding were: (1) Pender's and Hoskins' crossclaims against John A Wise & Associates, PLLC ("Wise") and related persons;[3] and (2) Achilles' personal claims against Pender. The bankruptcy court thereafter granted summary judgment in favor of Pender on Achilles' claims.[4]

## C.    The compromise motion and Achilles' opposition.

In April 2023, Hoskins moved to compromise the estate's remaining disputes with Pender. As Hoskins explained, in light of the bankruptcy court's adverse rulings her only potentially surviving claim against Pender was an ill-defined § 506(c) surcharge claim.[5] Under the proposed settlement, Hoskins and Pender would exchange mutual releases except for

---

[3] According to Pender, Wise's liability arose from its failure to adequately perform its duties as a closing and escrow agent in the loan transaction between Pender and Debtor. The crossclaims alleged breach of contract, equitable indemnity, contribution, negligence, breach of fiduciary duty, and requested an accounting.

[4] The denial of Achilles' motion for relief from the summary judgment order is the subject of a separate appeal pending before this panel. *See Achilles v. Pender Cap. Asset Based Lending Fund I, LP (In re Theos Fedro Holdings, LLC)*, BAP No. NC-23-1086-BSC (argued and submitted Nov. 30, 2023). The resolution of that appeal does not materially affect our analysis and resolution of this appeal.

[5] Section 506(c) provides:

> The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim, including the payment of all ad valorem property taxes with respect to the property.

We found little or nothing in the record detailing the nature or the extent of Hoskins' asserted § 506(c) claim.

4

Pender's rights to: (1) a secured claim against the Ellis property; (2) all rents from the Ellis property that Hoskins had collected; and (3) an unsecured "deficiency claim" against the estate that might result from the foreclosure. Additionally, Hoskins agreed to stipulate to relief from stay to enable Pender to pursue its right to foreclose against the Ellis property. Pender and the Commissioner also agreed to resolve their priority dispute. Both Pender and Hoskins would retain their claims against Wise.

Achilles, through counsel, objected to the compromise motion. Achilles asserted that his "equitable interest" in the Ellis property qualified for protection under California's homestead exemption laws. However, absolutely nothing in the objection explained how or why this claimed homestead exemption had any bearing on the compromise motion.

On the day of the compromise hearing Achilles filed his own pro se opposition to the compromise motion. Unlike his counseled objection, Achilles claimed that: (1) Hoskins suffered from a conflict of interest (though the conflict of interest was not identified); (2) the court should reduce Debtor's debts and void Pender's lien; and (3) Hoskins should be removed as chapter 11 trustee and the Debtor should be reinstated as a debtor-in-possession—with Achilles in charge. Again, there is no explanation how or why any of these claims related to the propriety of the compromise motion at issue.

**D.    The compromise hearing and the order approving the compromise.**

The day before the compromise hearing the bankruptcy court entered

a docket text order directing Hoskins' counsel to be prepared to explain:

> (1) what is the benefit to the estate by virtue of the compromise; (2) what authority exists under FRBP 9019 for the court to approve a settlement between the Labor Commissioner and Pender; and (3) how could Pender have a deficiency against the Debtor if it conducts a non-judicial foreclosure sale?

At the hearing, Hoskins' counsel addressed the first and third questions. He explained that the compromise benefitted the estate because Pender was relinquishing its claimed lien interest in a $300,000 forfeited deposit that Hoskins retained following an aborted bankruptcy sale of the Ellis property. Counsel further maintained that the resolution of all disputes between Pender and the estate would help reduce further expense and delay in administering the estate. At the same time, he explained that Hoskins agreed to turn over $120,000 in rents she held subject to Pender's lien.

Hoskins' counsel then addressed the deficiency question. He conceded that Pender was not legally entitled to a deficiency claim to the extent it conducted a nonjudicial foreclosure under California law. Importantly, however, he explained that from the estate's perspective, allowing an unsecured deficiency claim would not prejudice the estate's creditors because "[t]here is no chance that unsecured creditors will get any distribution, and so if Pender were to file that claim, absent this agreement, we would never object to it because it doesn't mean anything [to the estate]." Pender likewise conceded that it was not legally entitled to a

6

deficiency claim against the Debtor to the extent it conducted a nonjudicial foreclosure of the Ellis property. But it maintained that allowance of the deficiency claim in Debtor's bankruptcy might somehow positively impact its rights vis-à-vis the guarantor of the loan.[6]

As for the question regarding the bankruptcy court's authority to approve a compromise of a dispute between Pender and the Commissioner under Rule 9019, the court effectively withdrew the question. The court doubted its authority under Rule 9019 to approve this aspect of the compromise because it involved two "nonparties." Nonetheless, it indicated that it could generally approve this aspect of the compromise because it facilitated Hoskins' administration of the bankruptcy estate.

The bankruptcy court then gave Achilles' counsel an opportunity to speak in support of his objection. Counsel asserted that authorizing the compromise somehow adversely affected Achilles' claimed homestead interest to the extent the parties' settlement recognized the Commissioner's lien interest in the Ellis property. The bankruptcy court rejected this assertion. As the court explained, any interest or right Achilles claimed in the Ellis property simply was not implicated by the estate's settlement with Pender or by the compromise between Pender and the Commissioner.

The bankruptcy court concluded that Hoskins had carried her burden to establish the four factors articulated in *Martin v. Kane (In re A & C*

---

[6] Evidently, Achilles guaranteed Debtor's obligations under the Pender loan. But no guaranty is referenced or included in the record for this appeal.

*Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986), for the assessment of compromises proposed under Rule 9019. On May 15, 2023, the bankruptcy court entered its order approving the compromise. Achilles timely appealed.[7]

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). Subject to the standing discussion set forth below, we have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1.      Does Achilles have standing to challenge the bankruptcy court's compromise order?

2.      Did the bankruptcy court abuse its discretion in approving the compromise?

## STANDARDS OF REVIEW

"Standing is a legal issue subject to de novo review." *Arakaki v. Lingle*, 477 F.3d 1048, 1056 (9th Cir. 2007). When we review a matter de novo, we consider it anew as if no decision previously had been rendered. *Kashikar v.*

---

[7] Achilles purports to appeal not only on his own behalf but also as the sole and managing member of the Debtor. But Achilles lacks the right or authority to represent the estate's interests in this appeal. As trustee, Hoskins represents the estate. *See Estate of Spirtos v. One San Bernardino Cnty. Super. Ct. Case Numbered SPR 02211*, 443 F.3d 1172, 1175–76 (9th Cir. 2006). Achilles also purports to appeal as trustee of his personal trust. But trusts must be represented by licensed counsel. A pro se litigant cannot represent a separate and distinct legal entity in federal appeals. *See D-Beam Ltd. P'ship v. Roller Derby Skates, Inc.*, 366 F.3d 972, 973-74 (9th Cir. 2004).

*Turnstile Cap. Mgmt., LLC (In re Kashikar)*, 567 B.R. 160, 164 (9th Cir. BAP 2017).

We review for an abuse of discretion the bankruptcy court's grant of the compromise motion. *Spark Factor Design, Inc. v. Hjelmeset (In re Open Med. Inst., Inc.)*, 639 B.R. 169, 180 (9th Cir. BAP 2022), *aff'd in two separate decisions*, 2023 WL 7122577, and 2023 WL 7123763 (9th Cir. Oct. 30, 2023). The bankruptcy court abused its discretion if it applied an incorrect legal rule or its factual findings were illogical, implausible, or without support in the record. *TrafficSchool.com v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

## DISCUSSION

**A.     This appeal must be dismissed because Achilles lacks standing.**

Though not raised in the appellate briefing, we have an independent duty to review the appellant's standing. *Langer v. Kiser*, 57 F.4th 1085, 1091 (9th Cir. 2023) (citing *Bernhardt v. Cnty. of Los Angeles*, 279 F.3d 862, 868 (2002)). Standing is a threshold jurisdictional requirement derived from the "case-or-controversy" requirement of Article III of the Constitution. *Clifton Cap. Grp., LLC v. Sharp (In re E. Coast Foods, Inc.)*, 80 F.4th 901, 905–06 (9th Cir. 2023).[8] The party invoking the federal appellate court's jurisdiction—in

---

[8] Federal courts in the Ninth Circuit have a long history of focusing on the "person aggrieved" test as a principle of prudential standing in bankruptcy appeals. *Id.* at 906. Under the person aggrieved test, the court assesses whether the challenged judgment or order diminished appellant's property, increased its burdens, or detrimentally affected its rights. *Fondiller v. Robertson (In re Fondiller)*, 707 F.2d 441, 443 (9th Cir. 1983). But there is no need here to assess whether Achilles is a person aggrieved given our determination that Achilles lacks Article III standing. *See In re E.*

this instance Achilles—has the burden of proving his Article III standing by establishing: (1) that he has suffered an "injury in fact" that is "concrete, particularized, and actual or imminent"; (2) the injury is "fairly traceable" to the order on appeal; and (3) the injury can be redressed by Achilles prevailing on appeal. *See id* at 906.

Injury in fact is the most important of the three standing elements. *Id.* at 905–06; *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 339-42 (2016) (*as revised* May 16, 2016). Thus, "only when the [appellant] himself has suffered some threatened or actual injury" as a result of the court's judgment does the appellant have standing to appeal. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) (quotation marks omitted). In other words, the party invoking the court's jurisdiction must show that "he has a 'personal stake' in the alleged dispute" and that the injury he allegedly suffered affected him "in a personal and individual way." *Raines v. Byrd*, 521 U.S. 811, 819 (1997) (citation omitted).

Here, the compromise order authorized Hoskins to settle and release **the estate's** claims against Pender. By the time of the compromise, however, the bankruptcy court already had dismissed with prejudice virtually all those claims. The estate's only potentially surviving claim against Pender was a surcharge claim under § 506(c) where the estate was unable to sell the secured creditor's collateral. Nothing in the record details

---

*Coast Foods, Inc.,* 80 F.4th at 906, 910 & n.10.

10

the nature or extent of this potential claim. But Hoskins represented to the court that Debtor's bankruptcy estate was administratively insolvent.[9] Achilles did not dispute this fact much less present any evidence to refute Hoskins' representation. Thus, on the record presented, neither the Debtor nor the estate's unsecured creditors stood to gain anything by the further pursuit of the § 506(c) surcharge claim. Achilles was even further removed from having a stake in the resolution of the § 506(c) surcharge claim because he was neither the debtor nor a creditor of the estate.

The settlement also carved out from the parties' mutual releases Pender's allowed secured claim and the Pender Deficiency Claim. But the settlement only fixed Pender's right to those claims as against the **Debtor** and the **bankruptcy estate**. Nothing in the settlement suggests that **Achilles' personal liability** was determined or fixed by the settlement.[10] In short, there is no evidence before us to suggest that the bankruptcy court's order approving the compromise injured Achilles or affected any of his legally cognizable rights or interests. Without any demonstrable injury to such rights or interests, Achilles has failed to meet his standing burden.

---

[9] At the time the bankruptcy court approved the compromise, Hoskins was serving as chapter 11 trustee. Subsequently, the bankruptcy court converted the case to chapter 7. That conversion was based in part on Hoskins' declaration stating, "[t]he case is insolvent at the Chapter 11 level and there is no prospect for recovery of additional assets to pay administrative expenses." Hoskins now serves as chapter 7 trustee.

[10] Nor did the settlement purport to address Achilles' personal claims against Pender, as opposed to those claims asserted by the Theos Fedro bankruptcy estate. Achilles' claims are the subject of Achilles' separate appeal, *In re Theos Fedro Holdings, LLC*, BAP No. NC-23-1086-BSC.

*See Raines*, 521 U.S. at 819.

Achilles maintains without explanation that the compromise order harmed his claimed beneficial interest in the Ellis property or alternately harmed his claimed homestead exemption in that property. We disagree. The compromise did not purport to have any effect on Achilles' asserted beneficial interest or his asserted homestead exemption. As the bankruptcy court explained, Achilles remained free to assert his personal interests in an appropriate proceeding in an appropriate forum. The compromise proceeding in the bankruptcy case was neither.

Achilles has failed to establish his Article III standing to appeal the compromise order. Consequently, this appeal must be dismissed for lack of jurisdiction.[11]

## B. Achilles has presented no coherent basis for reversal on the merits.

Rule 9019(a) in relevant part provides that, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." To approve a compromise, the bankruptcy court must determine that it is "fair and equitable." *In re Open Med. Inst.*,

---

[11] Given that Achilles failed to satisfy the injury in fact element for Article III standing, he cannot satisfy the "fairly traceable" or "redressability" elements either, as both elements are premised on the existence of an injury in fact. *See generally* 13A C. Wright & A. Miller, Fed. Prac. & Proc. Juris. § 3531.4 (3d ed. 2023) (remarking on interconnected nature of the standing elements and indicating that a court cannot find either causation or redressability without first finding the requisite injury); *see also In re E. Coast Foods, Inc.*, 80 F.4th at 910 (dismissing appeal for lack of Article III standing without addressing either the second or third standing elements after determining that the appellant had failed to establish an injury in fact).

Inc., 639 B.R. at 180 (citing *In re A & C Props.*, 784 F.2d at 1381). A proposed compromise is considered "fair and equitable" when the bankruptcy court after considering the four factors articulated in *A & C Properties* determines that it should approve the proposed compromise. *In re A & C Props.*, 784 F.2d at 1381. Those four factors are:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Id.* (citations omitted).

The bankruptcy court specifically found that Hoskins had met her burden to establish that the settlement was fair and equitable under the *A&C Properties* factors. Achilles does not argue that the bankruptcy court failed to apply the correct legal standard from *A&C Properties*. Nor does he argue that the bankruptcy court's findings in support of its decision to approve the compromise were clearly erroneous. Rather, he broadly complains about: (1) the conduct of Pender in making the loan; (2) the bankruptcy court's decision to appoint a chapter 11 trustee and later to convert Debtor's case to chapter 7; and (3) Hoskins' administration of the Ellis property and the estate's claims against Pender. None of these complaints bear on the propriety of the compromise the bankruptcy court approved, which did not resolve Achilles' personal claims against Pender.[12]

---

[12] Pender's alleged misconduct might have had some relevance to the

We recognize that pro se litigants are entitled to considerable leeway in how they present issues on appeal. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 698–99 (9th Cir. 1990). But Achilles has failed to raise any relevant challenge to the settlement. We cannot manufacture arguments for Achilles. *See Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994). Because Achilles has not briefed any coherent argument challenging the order on appeal, we would affirm if we were to reach the merits of this appeal.

## CONCLUSION

For the reasons set forth above, we DISMISS this appeal for lack of standing.

---

compromise motion if the bankruptcy court had not already granted a Civil Rule 12(b)(6) motion, dismissing with prejudice virtually all the estate's claims against Pender.